**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Felix SEVERINO, Defendant–**
**Appellant.**

**No. 00–30161.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 2001

Filed Sept. 28, 2001

Bruce L. Brown, Anchorage, Alaska, for the defendant-appellant.

Stephen Cooper, Assistant United States Attorney, Fairbanks, Alaska, for the plaintiff-appellee.

Before: RYMER, THOMAS and McKEOWN, Circuit Judges.

Opinion by Judge RYMER; Dissent by Judge THOMAS

RYMER, Circuit Judge:

Felix Severino appeals his sentence for one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846, and seven counts of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1). The district court sentenced him to a mandatory minimum term of 120 months as a recidivist under 21 U.S.C. § 841(b)(1)(B). Severino argues that his sentence was improperly enhanced without the due process required by 21 U.S.C. § 851 because the information was defectively filed and served. We disagree, and affirm.

I

Severino and 17 others were charged in a Superseding Indictment filed December 13, 1995 with conspiracy to distribute cocaine and related charges of distribution and possession in violation of 21 U.S.C. §§ 846 and 841(a)(1). He and the United States entered into a written plea agreement under Fed.R.Crim.P. 11(e)(1)(C) on January 9, 1996. Severino admitted guilt on the eight drug counts for which he had been indicted. Among other things, the agreement provides that "[a]ny prior record including any drug convictions will be brought to the attention of the court"; and it acknowledges that "[i]f a defendant has a prior felony drug conviction the penalties are from 10 years to life imprisonment, a maximum fine of $4,000,000, and at least 8 years of supervised release." The agreement also waives the right to appeal or collaterally attack Severino's conviction or sentence on any ground "unless the court imposes a sentence in excess of the statutory maximum or a sentence that is contrary to the sentencing guidelines or a sentence that violates this plea agreement."

A plea hearing was held on January 9. As it turned out, Severino, his counsel and the district judge were physically present in court in Anchorage; the Assistant United States Attorney (AUSA) was in Fairbanks, and participated by telephone. As the court was discussing possible guidelines calculations during the plea colloquy, Severino's counsel stated: "... we may not know the extent of his criminal history, but we do know one thing.... He has a prior drug conviction back East ... So that—because of the amount, of course you'll kick up to that mandatory 10 years." The following dialogue then occurred:

> THE COURT: Okay. So he is going into this with eyes open and facing a mandatory minimum of 10 years—
>
> MR. DAYAN [Severino's counsel]: Yes, Your Honor.
>
> THE COURT: —120 months?
>
> MR. DAYAN: Yes, Your Honor.
>
> THE COURT: Is that correct, Mr. Severino? You were aware of that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay.
>
> MR. DAYAN: Of course, we'll ask the Government be—you know, they'll be put to the proof of the conviction, but I have—
>
> THE COURT: Sure.
>
> MR. DAYAN:—no doubt they can do it.

THE COURT: Okay. And you've discussed that with Mr. Severino. He understands how you would go about challenging that and what the odds are.

MR. DAYAN: I think the odds are zero, Your Honor, but I—

THE COURT: Okay.

MR. DAYAN:—told him that they need to have a conviction. But as a practical matter, Your Honor, it's really not an issue in this case.

Later in the colloquy Severino again indicated that the fact that the penalties for a prior felony drug conviction anywhere in a state or federal court would be a mandatory minimum 10 years had been explained to him, and that he understood how the penalties applied to. him and his situation. In response to advice from the court about the importance of telling counsel everything about his past, Severino replied: "I told him everything, yes, sir."

The AUSA explained that he was having difficulty with the requirement in 21 U.S.C. § 851 to file an information listing all of the prior convictions to be relied on in sentencing. He said that he was not confident that he had all the information that should be in that type of information, "[b]ut I have filed an information today, and I guess the shortness of getting these proceedings on has prevented me from getting this into the hands of the Court and counsel before this proceeding." The AUSA expressed his belief that the conviction in the information is the same case that counsel talked about, possession of cocaine in Massachusetts in 1992 and 1993, to which Severino's counsel agreed "that's the one" and added: "This was set on in a hurry as an accommodation to me so I could go out on vacation, and so we would not object to the fact that we weren't served in time or that it was filed perhaps a day later since this—the U.S. Attorney's Office was accommodating me." Further questioning from the court elicited from defense counsel that he was fully aware of the Massachusetts conviction and he reiterated that it was the same one he had mentioned before. The court also verified from Severino personally that he knew about it and knew that it might trigger a 10–year minimum sentence. All of this took place prior to entry of the guilty plea.

The information filed January 9 to which the AUSA referred alleges:

The prior conviction of the defendant herein, to be relied upon for purposes of sentencing in this case are as follows:

Possession of 1 ounce to 1 kilogram of cocaine, Massachusetts, 1992–1993.

The attached certificate of service represents that a copy of the information was served by deposit in the United States Post Office on Severino's counsel.

On the same day, the government filed an amended information. It alleges:

The above defendant's prior conviction to be relied upon for sentencing purposes is as follows:

Possession of 1 ounce to 1 kilogram of cocaine, Rhode Island, 1992–1993.

It, too, was served by mail January 9.

The presentence report, which had been translated into Spanish and given to Severino, and which he reviewed several times with counsel, indicates that the minimum term of imprisonment was ten years, which included the enhanced penalty for Severino's prior felony drug conviction in Rhode Island. The report states that Severino served approximately eight months of his term of imprisonment, then was deported from the United States to the Dominican Republic for being convicted of an aggravated felony. No objections were made to this part of the presentence report, although Severino did object to the recommended two-level enhancement for obstruction of justice and to the presentence

report's failure to provide a decrease in the offense level for acceptance of responsibility.

The district court sentenced Severino to imprisonment for ten years, but did not advise him of the right to appeal because of the waiver in the plea agreement. Severino brought no appeal, but one year later, on July 7, 1997, filed a motion under 28 U.S.C. § 2255 to vacate the sentence. Counsel was appointed. The motion challenged the validity of the § 851 information and the lack of advisement of a right to appeal. It was denied, Severino appealed, and a panel of this court remanded for advising Severino of his right to appeal and for resentencing. At resentencing, Severino argued that the information was in error and could not be corrected by the amended information, and that both informations were vague and neither had been served before the plea was taken. The district court rejected these challenges, noting that counsel waived any timing problem with Severino's concurrence, and that Severino went into the plea agreement expecting a 10–year sentence; Severino admitted he sustained the conviction; there was substantial compliance with § 851; and he was not prejudiced by the information's failure to specify the proper place of conviction. Accordingly, the court reinstated the original judgment. Severino timely appealed.[1]

## II

■ At the outset, the government urges us to dismiss the appeal because it is barred by Severino's waiver of appeal. It submits that the limited exceptions to the waiver do not apply because the 10–year sentence was well below the 40–year maximum, his appellate issues are not guideline issues, and the sentence was within both the plea agreement and the expectation of the parties. However, Severino's appeal is not so constrained; he challenges the court's authority to enhance his sentence. His appeal waiver, while broad, does not preclude this kind of attack. *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir.1996).

## III

Severino makes several related arguments leading to the point that the procedural safeguards established by Congress in § 851 must be strictly adhered to or the defendant is not afforded procedural due process. He faults the district court for failing to ask him whether he affirmed or denied the Rhode Island conviction, and to inform him of his right to challenge it. He argues that the court erred in relying on an untimely and inaccurate information of a prior conviction in Massachusetts to enhance the sentence. He notes that neither he nor his counsel actually received a copy of the information before the plea was taken. Counsel's failure to object should make no difference, he submits, because these are jurisdictional defects that cannot be cured or waived.[2] Finally, Severino maintains that even if the information

---

1. Severino proceeds as if his appeal is from denial of his § 2255 motion, which is understandable in light of the procedural history of this case. In actuality, the appeal is from the district court's final judgment of May 9, 2000, entered after remand, upon resentencing. However, we shall treat the merits of the § 851 issue that we did not reach in our prior disposition as merged into this appeal from the judgment entered at resentencing.

2. Severino also suggests that the district court erred in finding that he was not prejudiced by counsel's failure to object, because otherwise the Massachusetts conviction (and we assume, the Rhode Island conviction as well) could not have been used to enhance the sentence. To the extent this sounds in ineffective assistance of counsel, it is an issue that is not noticed on appeal and which we decline to consider, because it is an issue best

were timely filed and that the amended information corrected only a clerical error, which he contends it did not, still the information was inadequate because it did not provide a number, date of conviction, or sentencing court.

## A

We turn first to the government's compliance with the filing and service requirements of § 851(a).

■ The sentence of a defendant convicted of a drug offense under § 841(a) may be enhanced for prior convictions for felony drug offenses, 21 U.S.C. § 841(b), but first the government must file an information—and serve a copy on the defendant or counsel—stating in writing the previous convictions upon which it intends to rely. *See* 21 U.S.C. § 851.[3] We expect "strict compliance" with these requirements. *United States v. Hamilton*, 208 F.3d 1165, 1168 (9th Cir.), *cert. denied*, 531 U.S. 867, 121 S.Ct. 164, 148 L.Ed.2d 111 (2000). Without it, a court may not enhance a sentence even if a defendant has prior felony drug convictions. As we recently explained in *Hamilton*, § 851(a) "ensures proper notice so a defendant is able to challenge the information," and "allows a defendant to make an informed decision about whether or not to plead guilty." *Id.*

---

left for collateral review. *See United States v. Karterman*, 60 F.3d 576, 579 (9th Cir.1995).

3. Section 851 reads in relevant part:

§ 851. **Proceedings to establish prior convictions**

(a) **Information filed by United States Attorney**

(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

. . .

(b) **Affirmation or denial of previous conviction**

If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

(c) **Denial; written response; hearing**

(1) If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the United States attorney. The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment. The failure of the United States attorney to include in the information the complete criminal record of the person or any facts in addition to the convictions to be relied upon shall not constitute grounds for invalidating the notice given in the information required by subsection (a)(1) of this section. . . .

(2) . . . Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge.

(d) **Imposition of Sentence**

(1) If the person files no response to the information, or if the court determines, after hearing, that the person is subject to increased punishment by reason of prior convictions, the court shall proceed to impose sentence upon him as provided by this part.

Here, the AUSA represented at the hearing that the information had been filed (*i.e.*, before the plea was taken or entered) and the certificate of service attached to it certifies that the information was served by deposit in the United States Post Office. Regardless, thanks to geography and to defense counsel's request for a hearing on January 9, the AUSA, the defendant, and his counsel were not in the same place at the same time. Had they been, and had a copy of the information been handed over personally at the hearing, there would be no problem at all. *See United States v. Weaver*, 905 F.2d 1466, 1481 (11th Cir. 1990) (government complied with § 851(a) by serving defendant and his counsel personally before trial). As it happened, however, neither Severino nor his attorney had a copy of the information in hand. Severino does not quarrel with service by mail as such,[4] but questions whether the government mailed the information prior to the 10:05 a.m. hearing and, in any event, argues that service was defective because the information was not actually received.

Severino's attorney, however, explicitly waived timely filing and service. Severino does not argue to the contrary. Thus, unless Severino is correct that compliance with § 851(a) is a jurisdictional defect that may not be waived, we need not determine whether the AUSA timely filed the information.

Severino contends, relying on the law of several other circuits, that the procedural requirements of § 851 may not be waived, because compliance is "jurisdictional." It is true, as Severino argues and as the dissent observes, that the majority of other circuits have referred to the procedural aspects of § 851 as "jurisdictional."[5] But in these matters, it is the quality of the reasoning not the quantity of opinion that counts, and on this basis we cast our lot with the First Circuit. The bottom line is that while the steps prescribed in § 851(a) must be taken before an enhancement is authorized, they are not "jurisdictional" in the sense that the court lacks power to go forward with sentencing (including imposi-

---

4. Section 851(a)(1) does not say what kind of service is required, but the Federal Rules of Criminal Procedure provide that "[s]ervice upon the attorney or upon a party shall be made in the manner provided in civil actions." Fed.R.Crim.P. 49(b). The Federal Rules of Civil Procedure permit service by mail, and provide that service by mail "is complete upon mailing." Fed.R.Civ.P. 5(b). *See United States v. Kennedy*, 133 F.3d 53, 58–59 (D.C.Cir.1998) (service by mail is acceptable method of notifying defendant under § 851(a); government need show only that it mailed the information properly, and not that it was actually received); *United States v. White*, 980 F.2d 836, 840 n. 8 (2d Cir.1992) (despite defense's receipt of service after trial began, mailed service met timeliness requirement of § 851(a)); *see also United States v. Lujan*, 589 F.2d 436, 438 & n. 1 (9th Cir. 1979) (noting generally that mailed service is acceptable for criminal cases).

5. *See, e.g., United States v. Lawuary*, 211 F.3d 372, 376 n. 6 (7th Cir.2000) ("We have held that the requirements of section 851 are jurisdictional in nature."); *Harris v. United States*, 149 F.3d 1304, 1306–09 (11th Cir.1998) ("court lacks jurisdiction to enhance a sentence unless the government strictly complies with the procedural requirements of § 851(a)"); *United States v. Belanger*, 970 F.2d 416, 418 (7th Cir.1992) ("Failure to file the notice prior to trial deprives the district court of jurisdiction to impose an enhanced sentence."); *United States v. Wright*, 932 F.2d 868, 882 (10th Cir.1991) ("Failure to file the information prior to trial deprives the district court of jurisdiction to impose an enhanced sentence."); *United States v. Allen*, 566 F.2d 1193, 1196 (3d Cir.1977) (filing is jurisdictional prerequisite, not deciding if service is also); *United States v. Cevallos*, 538 F.2d 1122, 1125–26 (5th Cir.1976) (interpreting *United States v. Noland*, 495 F.2d 529 (5th Cir.1974), to mean filing is jurisdictional and assuming without deciding that service is as well).

tion of an enhancement for prior convictions). Jurisdiction in this sense is conferred by 18 U.S.C. § 3231.

■ In *Prou v. United States*, the First Circuit considered the same jurisdictional argument that Severino presents here. 199 F.3d 37 (1st Cir.1999). That court's analysis is compelling and bears repetition:

> Whether or not the prosecution files a timely section 851(a)(1) information, a federal district court plainly possesses subject-matter jurisdiction over drug cases. *See* 18 U.S.C. § 3231. This jurisdiction necessarily includes the imposition of criminal penalties. Once subject-matter jurisdiction has properly attached, courts may exceed their authority or otherwise err without loss of jurisdiction. *See United States v. Wey*, 895 F.2d 429, 431 (7th Cir.1990) ("Courts may err, even offend the Constitution, without losing subject-matter jurisdiction."); *cf. Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (indicating that only claims that go "to the very power of the State to bring the defendant into court to answer the charge brought against him" implicate subject-matter jurisdiction). Thus, the only question that legitimately arises from the prosecution's late filing of a section 851(a)(1) information concerns the court's authority to impose an enhanced sentence. This is simply not a question of subject-matter jurisdiction.

199 F.3d at 45 (some internal citations and parentheticals omitted). The court went on to note that the term "jurisdiction" is a slippery one; it has a variety of meanings and is often used imprecisely. *Id.* at 45–

46. And in this case, it is used improperly. Put simply, the strictures of § 851 have nothing to do with the subject-matter jurisdiction of the federal courts.[6] Rather, the question is whether the requirements of § 851 are subject to waiver. Because jurisdiction is not implicated, the protections contained in § 851 are like the many other statutory provisions that benefit defendants and that may be waived. *Id.* at 47 (citing *United States v. Mezzanatto*, 513 U.S. 196, 201, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995)).

There is little more than a house of cards on the other side of the fence. Most of the courts that term § 851 filings "jurisdictional" have failed to delve into the meaning of the term "jurisdiction" or have relied upon authority that is slim, at best. As Judge Easterbrook has observed:

> It is easy to find opinions saying that § 851(a) is a jurisdictional rule. Our circuit has at least three. It is considerably harder to find an explanation for this assertion.... Only two courts of appeals have addressed this subject with independent reasoning, as opposed to citations. *Prou v. United States*, 199 F.3d 37, 42–46 (1st Cir.1999) holds that § 851(a) is *not* jurisdictional, and *United States v. Baucum*, 80 F.3d 539, 543–44 (D.C.Cir.1999) resolves a similar issue under 21 U.S.C. § 860(a) against a jurisdictional classification.

*United States v. Lawuary*, 211 F.3d 372, 378–79 (7th Cir.2000) (Easterbrook, J., concurring) (internal citations omitted).

Two examples illustrate the point. In *United States v. Noland*, the Fifth Circuit held that § 851 "prohibits an enhanced

---

6. The D.C. Circuit is in accord. *See United States v. Vanness*, 85 F.3d 661 (D.C.Cir.1996). As it explained:

   Several courts have described § 851(a)(1) as a "jurisdictional" requirement. "Jurisdiction" is a word of many, too many, meanings.

We prefer to put the matter in different terms. A prosecutor's compliance with § 851(a)(1) is simply a necessary condition to a judge's imposing an enhanced sentence on the basis of a defendant's prior convictions.

*Id.* at 663, n. 2 (citations omitted).

sentence unless the Government seeks it and requires that to obtain enhancement, the Government must file an information prior to trial." 495 F.2d 529, 533 (5th Cir.1974). The court did not consider whether harmless error analysis applied, but seems implicitly to have held that it does not. "Jurisdiction" was not addressed. Two years later, this decision was recharacterized as follows in *United States v. Cevallos:* "In Noland, ... the failure to file the information of previous conviction prior to trial deprived the District Court of jurisdiction to impose an enhanced sentence...." 538 F.2d 1122, 1125 n. 4 (5th Cir.1976). The term "jurisdiction" appeared out of nowhere. Nonetheless, *Noland* and *Cevallos* became the authority upon which other courts have held that the requirements of § 851 are "jurisdictional." *See, e.g., Harris v. United States,* 149 F.3d 1304, 1306–08 (11th Cir.1998); *United States v. Belanger,* 970 F.2d 416, 418 (7th Cir.1992); *Lawuary,* 211 F.3d at 378 (noting that the Seventh Circuit's "cases rest in the end on a misreading of *Cevallos* ") (Easterbrook, J., concurring); *United States v. Allen,* 566 F.2d 1193, 1196 (3d Cir.1977). The Tenth Circuit's similar holding in *United States v. Wright* likewise relies upon a Tenth Circuit case that points back to *Noland,* Eleventh Circuit cases that build off of *Noland* and *Cevallos,* and *Cevallos* itself. 932 F.2d 868, 882 (10th Cir.1991).

Nor is there any reason why a defendant's rights under § 851 may not be waived. *See Mezzanatto,* 513 U.S. at 200–02 (noting that waiver of constitutional and statutory rights is presumptively available). It is not enough to dismiss the inquiry into the jurisdictional nature of § 851 and to state that "the Act precludes courts from enhancing sentences unless" § 851 is adhered to. Dissent at 14049. This simply restates the statute's mandatory language, which begs the question of whether § 851 is subject to waiver. The fact that the language of the statute is mandatory does not answer this question. To the contrary, even rights of a criminal defendant that are created by mandatory statutory language may be waived. *See New York v. Hill,* 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000) (holding that waiver applies despite statute's requiring trial schedule within certain time limits and use of mandatory "shall" language); *United States v. Piascik,* 559 F.2d 545, 549 (9th Cir.1977) (holding that 28 U.S.C. § 753(b), which *requires* the verbatim transcription of court proceedings, may be waived); *see also Prou,* 199 F.3d at 47 ("Because section 851(a)(1)'s temporal requirements exist for the defendant's benefit, it makes perfect sense to give the defendant the power to waive (and the obligation not to forfeit) strict compliance with them."). Thus, in the absence of a jurisdictional defect, or some other compelling reason that a right may not be waived, *see Hill,* 528 U.S. at 116–17, 120 S.Ct. 659 (discussing certain rights that are non-waivable), nothing prevents an informed defendant, represented by an informed attorney, from waiving the requirements of § 851.

▪ Here, as the First Circuit noted, jurisdiction is conferred by 18 U.S.C. § 3231. Therefore, the normal rules of waiver, forfeiture, and prejudicial error, apply.[7] *See* Fed.R.Crim.P. 52(a) ("Any er-

---

7. Some form of harmless error analysis on the procedural aspects of § 851(a) comports with the current practice, if not the phrasing, of many courts. *See, e.g., United States v. Lipford,* 203 F.3d 259, 271 (4th Cir.2000) (reviewing filing and service of § 851 information for plain error); *United States v. Brown,* 921 F.2d 1304, 1308–09 (D.C.Cir.1990) (upholding information filed on day of trial in light of government's oral notification two

ror, defect, irregularity or variance which does not affect substantial rights shall be disregarded."). Applying them here, the AUSA represented that an information had been filed, and what it charged. Severino's counsel knew that he did not have a copy of it, but did not ask for a continuance or object to proceeding without the information.[8] Indeed, he expressly stated that he did not need a copy.

Nor is there any question that Severino's decision about whether to plead guilty was fully informed. He said that he knew that he was subject to a mandatory minimum 10–year sentence on account of a prior felony drug conviction that there was no basis to challenge. He said that he had discussed all of this with counsel. The plea agreement recognized the prospect. And Severino acknowledged his understanding of the consequences to the court.

In sum, to the extent that either the filing or service of the information was not effective, the defect could be, and was, waived. Beyond this, the due process purposes of § 851(a) were served, because Severino was able to make an informed decision about whether or not to plead guilty; he knew exactly what his exposure was.

## B

■ Severino and his counsel also knew exactly what the information alleged, although they had not seen a copy of it, because the AUSA told them so correctly: a prior felony drug conviction in Massachusetts. The problem, of course, is that

the place of conviction alleged in the first information turned out to be wrong. A few hours later the government filed an amended information correcting the place. Severino now argues that this was a defect that could not be cured because it was not "clerical."

In some (indeed, we suspect, in most) cases, this could well be true. Given its statutory ability to ask for the taking of the plea to be postponed, there is little excuse for the government to get its information wrong. However, this case is unlike most cases. In the context of this case, we cannot say that the defect in the first information, or its correction in the amended information, was consequential.

The hearing was held when it was as an accommodation to Severino's counsel. He and Severino unquestionably knew that Severino had a felony drug conviction, that it was "back east," and that the AUSA thought it was Massachusetts based on information he had been given but in any event believed it was the same conviction Severino and his counsel had been talking about during the colloquy. They agreed this was so.

There is no possibility that Severino was confused about the prior felony drug conviction that subjected him to the 10–year mandatory minimum sentence. He had been *arrested* in Massachusetts on *driving offenses*, but had only been *convicted* in Rhode Island on a *felony drug offense*. He stated at the plea hearing that he had told his counsel about all prior convictions and understood that his prior felony drug conviction subjected him to a 10–year man-

---

days earlier); *United States v. Weaver*, 905 F.2d 1466, 1481 (11th Cir.1990) (oral notification and timely service sufficed even though information not filed in court until after trial began).

**8.** By the same token, the government also could, and no doubt should, have requested a

continuance so that it could be sure of its facts and of the fact that it had strictly complied with the statute. Section 851(a)(1) so permits. However, the process was speeded up to accommodate defense counsel, who explicitly waived objection to timing.

datory minimum sentence. There is no evidence of any other drug felony conviction on his record. Counsel said there was no objection to the information being "filed perhaps a day later." The amended information in fact corrected the place of conviction within the day.

■ While § 851 clearly prescribes procedural requirements, it says nothing about what the information must aver to conform *substantively. See Hamilton,* 208 F.3d at 1168–69 (citing other cases to the same effect). Nor does it define what constitutes a "clerical mistake." However, "[s]ection 851 should be interpreted in a manner 'so as to avoid elevating form over substance.'" *Id.* at 1168, (quoting *United States v. King,* 127 F.3d 483, 489 (6th Cir.1997)). From the plea negotiations, the plea proceedings, and the first information, Severino had notice that the government intended to seek an enhancement.[9] He knew that he had *the* conviction upon which the government sought to enhance his sentence. As the district court concluded, there was a meeting of the minds. There is no question in the context of this case that the government, Severino and the court were on the same page. For this reason, the amendment could not have been material in Severino's case. His decision to plead guilty rather than go to trial was fully informed by the mandatory minimum sentence for a prior drug felony conviction that he admitted and agreed was the same one the information was based upon. He never suggested otherwise, sought to withdraw from the plea, or challenged the fact of his Rhode Island conviction. Nor did he ever dispute that the Rhode Island conviction qualified for the enhancement. In these circumstances, we cannot say that

the mistake in the first information, cured within the time contemplated by counsel, was material or prejudicial.

C

■ For the same reasons, we cannot say that the court lacked authority to enhance Severino's sentence because the amended information failed to provide a case number, date or court. *See, e.g., Hamilton,* 208 F.3d at 1167 (wrong year); *King,* 127 F.3d at 489 (wrong date); *United States v. Steen,* 55 F.3d 1022, 1025–27 (5th Cir.1995) (wrong court number and type of conviction); *United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1485 (10th Cir. 1994) (no number, date or place of conviction, other than state); *United States v. Campbell,* 980 F.2d 245, 247, 251–52 (4th Cir.1992) (wrong statutory section). In his case (though, we repeat, not necessarily in any other), the amended information provides clear notice of the particular prior conviction upon which the government relied for enhancing the sentence. It was he who first brought up the prior felony drug conviction that would trigger the mandatory minimum sentence. He never objected on the basis that he could not tell which conviction the government was proceeding on for lack of a case number, date or sentencing court. So far as the record discloses, the amended information described the only felony drug offense on which Severino had been convicted. The presentence report based its recommended 10–year mandatory minimum sentence on the Rhode Island conviction, which it described in detail, yet Severino lodged no objection to it.

D

■ Finally, Severino contends that the district court failed to inquire of him per-

---

**9.** *Cf. United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1484–85 (10th Cir.1994) ("Given the pretrial procedure in this case, ... we dis-

agree that the facts contained in the information did not provide sufficient notice as mandated by the statute.").

sonally whether he affirms or denies the previous conviction, and to inform him of his right to challenge it. Section 851(b) imposes a duty of inquiry on the district court after an information is filed to determine if the defendant "affirms or denies that he has been previously convicted as alleged in the information," and a duty of advisement to "inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." 21 U.S.C. § 851(b). Here, the district court failed to do either in so many words. Because we require strict compliance with the procedural aspects of § 851(b), the court plainly erred. *Hamilton*, 208 F.3d at 1168; *United States v. Garrett*, 565 F.2d 1065, 1072 (9th Cir.1977) (failure to comply with § 851(b) renders sentence illegal; remanding for resentencing in compliance with its procedures). However, we need not recognize the error, for Severino's substantial rights were not affected. *United States v. Olano*, 507 U.S. 725, 734–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

Severino admitted the prior drug felony conviction that subjected him to the mandatory minimum 10–year sentence. After full discussion with Severino about his criminal history, counsel told the court that there was no basis for challenging the prior drug felony conviction. Severino never filed a response or denied the allegations of the amended information pursuant to 21 U.S.C. § 851(c)(1). He affirmed the accuracy of the presentence report which listed the Rhode Island conviction as the predicate for sentencing enhancement. And his § 2255 papers concede that there is no basis for challenging the conviction.

It is clear from the circumstances that Severino does not contest the validity of his prior felony drug conviction. Whatever the shortcomings in compliance with § 851(b), Severino was not prejudiced.

AFFIRMED.

THOMAS, Circuit Judge, dissenting:

The conclusion that a district court has authority to proceed with sentencing despite the government's admitted failure to comply with the strict procedural requirements of 21 U.S.C. § 851(a) conflicts with the decisions of eight other circuits, the plain statutory language and legislative history. It also cannot be reconciled with our Circuit's conclusion that the statute imposes mandatory requirements that preclude sentence enhancement if not observed. *United States v. Hamilton*, 208 F.3d 1165, 1168 (9th Cir.2000), *cert. denied*, 531 U.S. 867, 121 S.Ct. 164, 148 L.Ed.2d 111 (2000). Thus, I must respectfully dissent.

I

The requirements of 21 U.S.C. § 851(a) are unambiguous and specific:

No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

The consequences for neglecting to adhere to the statutory procedures are also clear. "The requirement is mandatory, and a district court cannot enhance a defendant's sentence based on a prior conviction unless the government satisfies the requirement." *United States v. Layne*, 192 F.3d 556, 575 (6th Cir.1999) (citing *United States v. Williams*, 899 F.2d 1526,

1529 (6th Cir.1990)), *cert. denied,* 529 U.S. 1029, 120 S.Ct. 1443, 146 L.Ed.2d 330 (2000).

Eight other circuits have concluded that Congress has established an absolute, non-waivable mandate that bars courts from enhancing sentences under § 851(a) unless the government has complied with its requirements. *See, e.g., United States v. Lawuary,* 211 F.3d 372, 376 n. 6 (7th Cir. 2000) ("[T]he requirements of section 851 are jurisdictional in nature."), *cert. denied,* 531 U.S. 907, 121 S.Ct. 252, 148 L.Ed.2d 182 (2000); *Layne,* 192 F.3d at 575; *Harris v. United States,* 149 F.3d 1304, 1306 (11th Cir.1998) ("The Eleventh Circuit and its predecessor court have unambiguously and repeatedly held that a district court lacks jurisdiction to enhance a sentence unless the government strictly complies with the procedural requirements of § 851(a)."); *United States v. Kennedy,* 133 F.3d 53, 59 (D.C.Cir.1998) ("Put succinctly, '[a] prosecutor's compliance with § 851(a)(1) is simply a necessary condition to a judge's imposing an enhanced sentence on the basis of a defendant's prior convictions.'") (quoting *United States v. Vanness,* 85 F.3d 661, 663 n. 2 (D.C.Cir. 1996)); *United States v. Steen,* 55 F.3d 1022, 1025 (5th Cir.1995) ("If the prosecution fails to comply with § 851's procedural requirements, a district court cannot enhance a defendant's sentence."); *United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1485 (10th Cir.1994) ("'Failure to file the information prior to trial deprives the district court of jurisdiction to impose an enhanced sentence.'") (quoting *United States v. Wright,* 932 F.2d 868, 882 (10th Cir.1991)); *Neary v. United States,* 998 F.2d 563, 565 (8th Cir.1993) ("'[T]he statute prohibits an enhanced sentence unless the government first seeks it by properly filing an information prior to trial.'") (quoting *United States v. Weaver,* 905 F.2d 1466, 1481 (11th Cir.1990)).

Our circuit has not departed from the mainstream. We have categorized the procedures as "mandatory" and bluntly stated that "[i]f the requirement is not satisfied, a court may not enhance a sentence even if a defendant has prior felony drug convictions." *Hamilton,* 208 F.3d at 1168. Only the First Circuit has held to the contrary. *Prou v. United States,* 199 F.3d 37, 45 (1st Cir.1999).

An examination of the plain language of the statute and its legislative history can lead to only one conclusion, and that is the one drawn by almost all of our sister circuits: Congress intended to deny courts the power to impose enhanced sentences absent compliance with the procedures established in § 851.

The procedure for enhancing sentences—and the penalty prescribed for failure to follow it—is in "sharp contrast" with § 851(a)'s predecessor statute. *United States v. Olson,* 716 F.2d 850, 853 (11th Cir.1983). Prior to 1970, federal law required the United States Attorney, in a drug case, to advise the court after conviction but before sentencing whether the defendant was a recidivist and therefore subject to a mandatory enhanced sentence. 26 U.S.C. § 7237(c)(2) (1964). The prior law was based on a mandatory minimum sentencing scheme under which prosecutorial discretion did not play a role. As the Fifth Circuit described it:

> The thrust of prior law, which required minimum sentences, was mandatory enhancement. The United States attorney was required to advise the court whether the defendant was a first offender. The court was required to enhance the sentence of a multiple offender, whether or not the prosecutor or the court thought enhancement desirable or necessary.

*United States v. Noland,* 495 F.2d 529, 532 (5th Cir.1974).

Under the prior statute, prosecutors had no choice in deciding whether to seek enhanced sentences based on prior convictions: the statute required the courts to impose sentence enhancement. Thus, notifying the defendant of the prosecutor's intent would have been superfluous.

Consistent with the theory of mandatory minimums, the prior statute was also "silent ... as to the consequences of nonfiling of the information prior to imposition of sentence." *United States v. White,* 980 F.2d 836, 846 (2d Cir.1992) (Kearse, J., dissenting). Thus, "in this context of congressionally ordained mandatory enhancement[,] prior cases upheld enhanced sentences despite procedural defects which did not infringe the defendant's right to deny and litigate his status." *Noland,* 495 F.2d at 532. Accordingly, a number of circuits held under the prior law that the government's failure to timely file an information seeking sentence enhancement was harmless error. *See, e.g., King v. United States,* 346 F.2d 123, 124 (1st Cir.1965); *United States v. Bell,* 345 F.2d 354, 357 (7th Cir.1965); *United States v. Duhart,* 269 F.2d 113, 116 (2d Cir.1959); *Knight v. United States,* 225 F.2d 55, 57 (9th Cir. 1955).

The Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801–971, ("the Act") radically altered existing law and procedure. The "one major goal of the Act was to make more flexible the penalty structure for drug offenses." *Noland,* 495 F.2d at 533. "The purpose was to eliminate 'the difficulties prosecutors and courts have had in the past arising out of minimum mandatory sentences.'" *Id.* (quoting H.R.Rep. No. 91–1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4576). The theory of the Act was to eliminate mandatory sentences and to invest prosecutors with discretion as to whether to seek enhanced sentences and which prior convictions to invoke. *Id.* Thus, the statutory scheme was completely everted: rather than requiring courts to impose mandatory minimums regardless of prosecutorial desire, courts were prohibited from enhancing sentences unless the government had timely filed an information stating that it intended to seek an enhanced sentence based on specific prior convictions.

In contrast to the prior statute's silence about procedural error, the Act specifically addressed the issue. Section 851 provides a remedy for "clerical mistakes," which may be corrected by filing an amended information prior to the pronouncement of sentence. 21 U.S.C. § 851(a)(1). However, significantly, the Act did not allow a court to excuse or to allow waiver of the failure of the government to timely file an information identifying the crimes. The Act only allows a court to "postpone the trial or the taking of the plea of guilty for a reasonable period" and only then "[u]pon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty." *Id.*

The new procedural restrictions are firmly rooted in the theory of the Act, which shifted responsibility from judges to impose Congressionally-mandated sentences to prosecutors who were to decide whether to seek enhanced sentences. Under the new statutory scheme, "the district court has no authority to exercise [ ] or pretermit" the exercise of executive discretion. *Olson,* 716 F.2d at 853. Thus, "[u]nless and until prosecutorial discretion is invoked and the government files and serves an information as required by § 851, the district court has no power to act with respect to an enhanced sentence."

*Id.* "Harmless error cannot give the district court authority it does not possess." *Id.*

Thus, as a matter of statutory construction, it is clear that Congress intended to alter the prior procedures and to impose non-waivable, mandatory requirements. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. INS,* 514 U.S. 386, 397, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995). We also presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation. *United States v. Hunter,* 101 F.3d 82, 85 (9th Cir.1996). Further, "[a] particular statutory provision must be read in context with a view to its place in the statutory scheme." *Gorbach v. Reno,* 219 F.3d 1087, 1093 (9th Cir.2000). Finally, and perhaps most importantly, we generally presume that "Congress 'says in a statute what it means and means in a statute what it says there.' " *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). Given the plain language of § 851(a), its structure (namely, the specific remedies provided for procedural violations), the substantive alteration from prior law, and the import of judicial construction, there is no doubt that Congress meant what it said in providing that no person could be subjected to enhanced penalties based on prior convictions unless the government timely filed an information identifying the convictions upon which it intended to rely and served it on the defendant or his attorney.

In this case, it is clear that the United States failed to serve the amended information prior to Severino's change of plea hearing. Indeed, the district court specifically acknowledged this fact in its order denying Severino's § 2255 motion when it observed at the plea hearing that: "[The government] was not able to have [Severino's lawyer] or Severino served with copies of the information prior to the commencement of the Rule 11 plea hearing." Further, the Assistant United States Attorney admitted that, "the shortness of getting these proceedings on has prevented me from getting this into the hands of the Court and counsel before this proceeding." The district court was unaware of any filing at the hearing. The information was also incorrect and, as stated, could not sustain a sentence enhancement. Thus, because the procedural prerequisites of § 851 were not observed, the district court was without power to impose an enhanced sentenced in this case, regardless of whether Severino waived his § 851 rights or not.[1]

II

The majority's reliance on *Prou* is, I respectfully suggest, misplaced. First, the *Prou* court proceeded from the false prem-

---

1. Because my disagreement is one of statutory interpretation, I have assumed, *arguendo,* that Severino made an effective waiver of his right to contest the information under § 851. In fairness to Severino, the record is far less clear. Severino never personally waived his rights under § 851. The waiver claim is based solely on the statement made by Severino's attorney at the change of plea hearing that "[t]his was set on in a hurry as an accommodation to me so I could go on vaca-

tion, and so we would not object to the fact that we weren't served in time or that it was filed perhaps a day later since—the U.S. Attorney's Office was accommodating me." There was no representation that defense counsel had consulted with Severino prior to interjecting the spontaneous objection waiver. It is also evident that Severino and his attorney had some difficulty in communicating because Severino did not speak English and only had a limited education.

ise that if courts possess subject matter jurisdiction, they also possess the power to sentence outside their statutory authority. Second, in the context of the Act, application of the *Prou* court's rule would violate the separation of powers. Lastly, *Prou*'s rationale is inapplicable to this case because *Prou* involved issues of waiver in the context of a collateral habeas challenge, rather than on direct appeal.

The *Prou* court's primary quarrel is with the categorization of § 851's requirements as "jurisdictional" by some circuits. The *Prou* court observed that "a federal district court plainly possesses subject-matter jurisdiction over drug cases." 199 F.3d at 45 (citing 18 U.S.C. § 3231). Therefore, the panel reasoned, because non-jurisdictional defects are subject to waiver, the requirements of § 851 may be waived. *Id.* at 47.

This syllogism fails because it proceeds from a false premise, namely, that if subject matter jurisdiction is not implicated, then courts have the power to abrogate specific statutory restrictions on their sentencing authority. This is untrue. Absent unconstitutional statutory restrictions, courts cannot exceed their statutory grant of authority in sentencing defendants. *Melendez v. United States*, 518 U.S. 120, 130, 116 S.Ct. 2057, 135 L.Ed.2d 427 (1996) (holding that a district court "lack[s] the authority" to sentence a defendant below the statutory minimum absent a motion from the government); *United States v. Barragan–Mendoza*, 174 F.3d 1024, 1028–30 (9th Cir.1999) (holding that, pursuant to Federal Rule of Criminal Procedure 35(c), the district court lacks jurisdiction to amend a sentence more than seven days after its imposition even though the defendant agreed at the amendment hearing that the court did have authority); *United States v. Doe*, 53 F.3d 1081, 1083–84 (9th Cir.1995) ("We find no statutory authority

for sentencing adjudicated juvenile delinquents to supervised release.").

The fact that the Act confines the court's authority makes it different from other mandated statutory and constitutional procedures. The latter may, of course, be waived. But one cannot grant a court power by stipulation. A sentence imposed in excess of the court's statutory authority is illegal even if the defendant has agreed to the punishment. *United States v. Snider*, 957 F.2d 703, 706–07 (9th Cir.1992) (per curiam) (reversing the imposition of restitution, raised for the first time on appeal, noting "Federal courts have no inherent power to order restitution.... Restitution, as a criminal punishment, is subject to the general rule that plea agreements do not provide authority for a sentencing court to impose punishment in excess of the maximum provided by statute."); *Launius v. United States*, 575 F.2d 770, 772 (9th Cir.1978) ("[A]lthough prosecutors are given wide latitude in plea bargaining, they cannot legitimatize, through plea bargaining, the imposition of penalties in excess of the statutory maximum for the offense charged.").

Thus, the holding by the vast majority of other circuits that courts lack authority to enhance a sentence absent compliance with § 851 was not a product of judicial shamanism. It followed the statutory command. Congress plainly provided that, unless the government timely files an information identifying the relevant convictions, "[n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions." 21 U.S.C. § 851(a)(1).

To be sure, district courts are vested with original jurisdiction "of all offenses against the laws of the United States." 18 U.S.C. § 3231. But this jurisdictional grant does not empower a court to impose

a sentence contrary to law. Not only do courts lack power to impose sentences in excess of statutory authority, *Doe*, 53 F.3d at 1083–84, but the imposition of such a sentence constitutes plain error. *United States v. Guzman–Bruno*, 27 F.3d 420, 423 (9th Cir.1994). Thus, whether one construes § 851 as a jurisdictional statute or not is largely beside the point. The Act precludes courts from enhancing sentences unless specified statutory procedures are observed. If the statute is violated, then that portion of the sentence imposed in excess of statutory authority is void. *United States v. Pridgeon*, 153 U.S. 48, 62, 14 S.Ct. 746, 38 L.Ed. 631 (1894).

### A

Application of the *Prou* rationale in the specific context of the Act would also violate the separation of powers in two respects: (1) the power of Congress to define criminal sentences and (2) the power of the executive branch to control prosecutions.

First, it is "indisputable" that "the authority to define and fix the punishment for crime is legislative." *Ex parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 61 L.Ed. 129 (1916). There are no federal common law crimes. *Liparota v. United States*, 471 U.S. 419, 424, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985); *see also United States v. Coolidge*, 14 U.S. (1 Wheat.) 415, 416, 4 L.Ed. 124 (1816); *United States v. Hudson and Goodwin*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812). It is by legislative action that crimes and criminal procedure are defined; therefore, a court has no power to impose a sentence in excess of statutory authority. *Doe*, 53 F.3d at 1083–84. As this court, sitting *en banc*, has noted, "[t]he Supreme Court has stated unequivocally that 'Congress has the power to define criminal punishments without giving the courts any sentencing discretion.'" *United States v. Kaluna*, 192 F.3d 1188, 1199 (9th Cir.1999) (en banc) (quoting *Chapman v. United States*, 500 U.S. 453, 467, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991)). In *Kaluna*, we noted that the federal three strikes statute, 18 U.S.C. 3559, used words such as "mandatory" and "shall," and we concluded that Congress had stripped the court of sentencing discretion, thereby mandating imposition of a life sentence for the defendant — despite the high risk of an erroneous classification of one crime as a "strike." *Id.*

So it is with § 851. In passing the Act, Congress altered the statutory scheme and expressly stripped courts of the authority to impose an enhanced sentence in the absence of a properly and timely-filed information. Congress grants judicial criminal sentencing power; parties do not.

Second, by granting the executive branch the discretion to decide whether a sentence enhancement should be sought, the Act concomitantly removed that authority from the judiciary. Just as courts cannot commit an unindicted person to prison, courts cannot enhance a sentence under § 851 until the government elects formally to proceed with a sentence enhancement. *Olson*, 716 F.2d at 853. Thus, in this context, to allow courts to impose a sentence without the valid exercise of executive discretion would interfere with prosecutorial discretion. As we have previously observed, "separation of powers concerns prohibit us from reviewing a prosecutor's charging decisions absent a prima facie showing that it rested on an impermissible basis, such as gender, race or denial of a constitutional right." *United States v. Palmer*, 3 F.3d 300, 305 (9th Cir.1993). Indeed, "we have no jurisdiction to review prosecutors' charging decisions, absent proof of discrimination based on suspect characteristics such as race, religion, gender or personal beliefs."

*United States v. Oakes,* 11 F.3d 897, 899 (9th Cir.1993). As we recently stated *en banc,* "Courts generally have no place interfering with a prosecutor's discretion regarding whom to prosecute, what charges to file, and whether to engage in plea negotiations." *United States v. Banuelos–Rodriguez,* 215 F.3d 969, 976 (9th Cir. 2000). Under the Act, until the executive branch validly exercises its option to seek a sentence enhancement, the courts are powerless to impose one. Thus, the *Prou* rationale implicates the separation of judicial and executive powers, as well as the separation of judicial and legislative powers.

### B

Finally, the posture of this case also differs significantly from that of *Prou. Prou* was a *pro se* collateral challenge; this is a direct appeal. Prou's attorney had neglected to raise the issue on direct appeal. 199 F.3d at 41–42. Thus, the issue of whether § 851(a) implicated subject matter jurisdiction was important because, if it did not, then Prou would have to show cause and prejudice for his failure to raise the issue on direct appeal. *Id.* at 47. In analyzing whether Prou could avoid procedural default, the *Prou* court noted:

> In this case, the relevant error is the failure to object to an impuissant filing, resulting in the imposition of a sentence not authorized by law.

*Id.*

Based on that consideration, the court found the requisite "cause" because it was constitutionally ineffective assistance of counsel not to challenge a sentence enhancement imposed contrary to law. *Id.* at 48. The court also found prejudice because without the government's proper filing under § 851(a), "the district court would not have had recourse to a ten-year mandatory minimum sentence." *Id.* at 49.

Thus, the court reasoned, "[t]he subsequent imposition of such a sentence is prejudice, pure and simple." *Id.* The court then remanded for resentencing without the enhancement, noting that "we decline to grant the government the windfall of an unlawful sentence enhancement." *Id.* at 49 n. 7, 50. The ultimate result in *Prou* was not to enforce the defendant's waiver; it was to set aside the enhanced sentence.

Thus, the context of the "jurisdictional" discussion in *Prou* was far different. The *Prou* court was concerned about whether to apply the usual rules of procedural default on habeas review; it was not deciding on direct appeal whether a court could impose a sentence outside statutory authority. That claim, as the *Prou* court noted in its cause and prejudice discussion, was "a clear winner." *Id.* at 48.

For all of these reasons, it is inappropriate to apply, much less extend, *Prou* in the present context. The majority erred in doing so.

### III

In addition to the pure question of statutory interpretation, there are constitutional considerations in adhering to the procedures designated in § 851. "Due process requires that a defendant receive reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence for recidivism." *United States v. Belanger,* 970 F.2d 416, 418 (7th Cir.1992) (citing *Oyler v. Boles,* 368 U.S. 448, 452, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)). "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" *Memphis Light, Gas and Water Div. v. Craft,* 436 U.S. 1, 14, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). To comport with due process, "[t]he notice must be of such nature as reasonably to

convey the required information." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

"Section 851 was enacted to fulfill this due process requirement." *Belanger*, 970 F.2d at 418. The statute "ensures proper notice so a defendant is able to challenge the information" and "allows a defendant to make an informed decision about whether or not to plead guilty." *Hamilton*, 208 F.3d at 1168. It also permits a defendant "to plan his trial strategy with full knowledge of the consequences of a potential guilty verdict." *United States v. Johnson*, 944 F.2d 396, 407 (8th Cir.1991).

When a defendant decides to enter a guilty plea, the filed information becomes especially important because the defendant needs to make an informed choice. The fact that the government may be seeking the imposition of a mandatory sentence through a § 851 enhancement—and the basis for the enhancement—is critical information. Providing the defendant with a copy of the information helps assure the court that the defendant is entering a plea intelligently, voluntarily and with full knowledge of the consequences.

It is not uncommon for everyone but the defendant to be on the same page at a change of plea or sentencing hearing. In such cases, the proceedings are usually interrupted to make certain that the defendant personally understands the rights he is relinquishing and the sentence to which he may be exposed. Indeed, postponement of the hearing is the only remedy allowed by the Act when the government has failed to file a timely information. 21 U.S.C. § 851(a)(1). Thus, in addition to conforming to the statute, compliance with § 851 assures us that minimum due process requirements have been fulfilled.

## IV

Having said all this, I cannot conclude without observing that, in my opinion, both the district court and the government proceeded in absolute good faith in this unusual case. My differences are founded on the limitations Congress placed on the courts in enacting § 851. Although many rights may be waived, the parties cannot agree to grant a court extra-statutory sentencing power. Thus, even if Severino had effectively waived his § 851 rights, the district court lacked the power to impose the mandatory minimum sentence because the statutory predicates were not satisfied.

For these reasons, I respectfully dissent.