**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Felix SEVERINO, Defendant–**
**Appellant.**

**No. 00–30161.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 18, 2002.

Filed Jan. 14, 2003.

Bruce L. Brown, Anchorage, AK, argued for the defendant-appellant.

Stephen Cooper, Assistant United States Attorney, Fairbanks, AK, argued for the plaintiff-appellee. Timothy M. Burgess, United States Attorney, Anchorage, AK, assisted on the brief.

Before SCHROEDER, Chief Judge, REINHARDT, KOZINSKI, TROTT, RYMER, THOMAS, GOULD, PAEZ, BERZON, TALLMAN and RAWLINSON, Circuit Judges.

Opinion by Judge KOZINSKI; Dissent by Judge THOMAS

KOZINSKI, Circuit Judge.

Federal law imposes a mandatory minimum sentence for certain crimes, but only if the defendant has a felony drug prior. In order to render defendant eligible for the mandatory minimum, the government must allege the prior conviction in an information pursuant to 21 U.S.C. § 851. We consider what the government must do to comply with this provision.

## I

The government charged Felix Severino for his role in a conspiracy to distribute cocaine and the related charges of possession and distribution. *See* 21 U.S.C. §§ 846, 841(a)(1). After Severino and the United States entered into a plea agreement, the district court held a plea hearing in Anchorage, Alaska, with the Assistant United States Attorney appearing by telephone from Fairbanks.

Earlier that day, the prosecutor had filed an information in the Fairbanks federal courthouse alleging that Severino had had a prior felony drug conviction in Massachusetts, for "[p]ossession of 1 ounce to 1 kilogram of cocaine[,] 1992–1993." Severino was, in fact, convicted in 1992 for felony possession of 1 ounce to 1 kilogram of cocaine, but in Rhode Island, not Massachusetts.

At the change-of-plea hearing, Severino's counsel was the first to raise the topic of prior convictions. He mentioned that Severino had a prior felony drug conviction "back East," and represented that he (the lawyer) had explained the sentencing consequences of that conviction to his client. Defense counsel also offered that the chances of challenging the validity of the conviction were "zero," and "really not an issue in the case."

The prosecutor explained that the expedited timing of the hearing—set to accommodate the vacation schedule of Severino's attorney—hadn't given him a chance to get the information into the hands of the defendant or his counsel before the hearing. He did, however, represent that the information had been filed and summarized its contents. Severino's counsel enthusiastically confirmed the existence of the prior in the prosecutor's information ("That's

the one"), and Severino himself acknowledged the prior and the effect it would have on his sentence.

The judge accepted the guilty plea and sentenced Severino to the mandatory minimum of ten years in prison as a result of the prior. Neither at the change-of-plea hearing nor at sentencing did Severino object to the adequacy of the information filed—its substance, the timing or how it was served. Severino acknowledged, not once but three times, that he had a prior felony drug conviction. He said that he understood the sentencing effects of that conviction. And he did not then—nor does he now—suggest any way of challenging it.

Severino did not appeal but he eventually filed a petition pursuant to 28 U.S.C. § 2255.[1] Represented by a new lawyer, Severino challenged a number of errors. He made one successful trip to this court, where we vacated his sentence because the district court had failed to inform Severino of his right to appeal. *See United States v. Severino*, No. 99–35161, 1999 U.S.App. LEXIS 34564, 1999 WL 1278048 (9th Cir. Dec. 30, 1999). On remand, the district court reinstated the original sentence, though reluctantly—the court recognizing that Severino had made substantial progress in prison, but also noting its lack of discretion.

Severino appealed once again, and a divided panel affirmed on the ground that Severino had waived his rights under section 851(a) and that any deficiency not waived was harmless. *See United States v. Severino*, 268 F.3d 850 (9th Cir.2001). We subsequently took the case en banc. *United States v. Severino*, 284 F.3d 985 (9th Cir.2002).

---

1. By failing to appeal his sentence, Severino might have been deemed to have defaulted these claims. In an earlier appeal, however, we held that the government waived this ar-

gument by failing to raise it. *See United States v. Severino*, No. 99–35161, 1999 U.S.App. LEXIS 34564, at *2 n. 3, 1999 WL 1278048 (9th Cir. Dec. 30, 1999).

## II

Section 851 is a procedural statute; the facts and the law either exist to enhance defendant's sentence or they don't—section 851(a) doesn't change that.[2] The statute merely "ensures proper notice so a defendant is able to challenge the information [and] make an informed decision about whether or not to plead guilty." *United States v. Hamilton*, 208 F.3d 1165, 1168 (9th Cir.), *cert. denied*, 531 U.S. 867, 121 S.Ct. 164, 148 L.Ed.2d 111 (2000). These procedures take form in four requirements. The information must be in writing; it must be filed with the court and served on the defendant or his counsel; it must be filed and served before trial or before a guilty plea; and the substance of the information must identify the previous conviction(s).

Severino's principal claim is that the information did not satisfy the requirements of section 851 in two ways: the substance of the information, vague and naming the wrong state, failed to identify the prior conviction used at sentencing; and, even if the information was timely filed, it wasn't timely served because service must be received, not just mailed, before the plea hearing.

### A. The Specificity Requirement

■ The text of section 851(a) is "silent on the specificity with which the government must identify prior convictions." *United States v. Layne*, 192 F.3d 556, 576 (6th Cir.1999). Obviously, the information need not include every known fact about the prior. The government, rather, must include sufficient facts so that a rational defendant can identify the prior conviction and make an informed decision about whether to challenge the substance of the information. *See, e.g., id.*; *Kelly v. United States*, 29 F.3d 1107, 1109 (7th Cir.1994), *overruled on other grounds by United States v. Ceballos*, 302 F.3d 679 (7th Cir. 2002). We must consider whether inclusion of some information that inaccurately describes the prior conviction defeats the statutory purpose of giving defendant notice.

■ We have confronted this question in the similar setting of indictments. Like informations, indictments "provide defendants with the notice necessary to allow them to challenge the contents" of the charge. *United States v. Steen*, 55 F.3d 1022, 1026 (5th Cir.1995). We have found indictments legally sufficient if, as a whole, they "adequately apprised the defendant of the charges against him." *United States v. James*, 980 F.2d 1314, 1316 (9th Cir. 1992). Because a defendant can be put on notice of a charge despite certain mistakes, " 'minor or technical deficienc[ies] in the indictment' " will not reverse a conviction if there is no prejudice. *Id.* (quoting *United States v. Normandeau*, 800 F.2d 953, 958 (9th Cir.1986), *overruled in part on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir.2000)); *see also* Fed.R.Crim.P. 7(c)(3). Only where defendant is misled to his prejudice about the charges against him will we find an indictment inadequate.

■ We adopt the same approach in testing the sufficiency of a section 851(a) information: If the defendant, reading the information in context, will have no trouble understanding which prior conviction the

**2.** Section 851(a) provides in relevant part:

No person who stands convicted of an offense under [21 U.S.C. §§ 841 et seq.] shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

prosecutor means to identify, the information then has "stat[ed] ... the previous convictions," and the statutory purpose of providing defendant notice has been satisfied. Like the Fifth Circuit, we hold that errors in an information "negate[ ] the notice provided by the other listed data only if the discrepancy misled [the defendant] to his prejudice." *Steen,* 55 F.3d at 1028.

Other circuits have reached the same conclusion, allowing errors if the information, despite its mistakes, still definitively identified the prior conviction. Informations under section 851(a) have been deemed sufficient despite the fact that they contained the wrong date, *see United States v. King,* 127 F.3d 483, 489 (6th Cir.1997), the wrong offense, *see Steen,* 55 F.3d at 1025–28, and the wrong statutory section, *see United States v. Campbell,* 980 F.2d 245, 251–52 (4th Cir.1992), and even though the description of the prior was quite sketchy, *see United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1485–86 (10th Cir.1994) (no docket number, specific location or correct date). Section 851(a) was satisfied in each of these cases because the information gave the defendant fair notice of which prior conviction the government had in mind for seeking a sentence enhancement. *See, e.g., Steen,* 55 F.3d at 1026–27.

This is already the law in our circuit. In *Hamilton,* we "addressed the substantive requirements of an information under section 851(a)." 208 F.3d at 1168. Careful not to " 'elevat[e] form over substance,' " *id.* (quoting *King,* 127 F.3d at 489), we held that "[a]s long as the information provides clear notice to a defendant of the prior convictions (and the court gives an opportunity to attack [such] convictions ...), then the statute has been satisfied." *Id.* at 1169. Applying that standard, *Hamilton* held that an information that misstates the date of conviction by five years can nonetheless satisfy section 851: Given the context, the defendant in *Hamilton* "could not have been confused about the prior conviction" and therefore had "sufficient notice that the government was aware of his prior conviction and would seek to enhance his sentence." *Id.* at 1168–69.

■ The clerical error provision,[3] which allows the government to correct "clerical mistakes" in an information before sentencing, does not raise the inference that no other mistakes are permitted. The contrary view has been implicitly rejected by the circuits (including ours) that have found compliance with section 851(a) despite a number of non-clerical errors. *See* p. 944 *supra.* Nor is the clerical error provision, in fact, inconsistent with our analysis. The provision functions as a safe harbor for certain minor errors. If the error is deemed to be clerical, the government may simply correct it by filing an amended information without showing that defendant was not misled. If the error is non-clerical, however, the information is deemed defective *unless* the government shows that defendant could not reasonably have been misled to his prejudice as to the identity of the prior conviction.

■ Here, the information left no doubt about which prior conviction the government had in mind as the predicate for the sentence enhancement. The defendant has a prior drug conviction—a single prior drug conviction. The information correctly identified the crime (possession), the type of drug (cocaine), the quantity (1 ounce to 1 kilogram) and the year of conviction (1992–1993). It did err as to the state, but the error was no more serious than the five-year discrepancy we allowed

---

**3.** "Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence." 21 U.S.C. § 851(a)(1).

in *Hamilton*; it could not possibly have put Severino in doubt about which one of his prior convictions the government was referencing in the information. Indeed, Severino's counsel agreed that the information, as stated, was correct ("That's the one I was referring to when I said back East, Your Honor."). Severino himself agreed that the information was correct. Severino's counsel even volunteered that Severino's prior would "kick up [the sentence] to that mandatory 10 years." Severino, too, acknowledged that his prior would result in a 10–year minimum. In fact, he acknowledged it more than once. And he did not, and does not, suggest that he has any way to challenge its validity.

All told, Severino cannot reasonably assert that he was blindsided by the government. Nor can Severino reasonably assert that he entered his plea expecting anything less than a 10–year mandatory minimum sentence. The information put all parties—as clearly acknowledged during the plea hearing—on the same page. "It is inconceivable that [Severino] would have presented a different defense if the [information] had been corrected." *James,* 980 F.2d at 1319. Because the information, in light of the context, adequately identified Severino's prior conviction, it complied with the requirements of section 851(a), and with due process as well. *See Gonzalez–Lerma,* 14 F.3d at 1485.

### B. The Service Requirement

■ Section 851(a) requires that the information be filed *and* served before trial or the plea hearing. The statute does not define service. However, Fed.R.Crim.P. 49(b) generally defines service in criminal cases. We presume that Congress is aware of this provision and means to incorporate it by reference when it provides for service but does not specify the means. *See Lorillard v. Pons,* 434 U.S. 575, 583, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) (" '[W]here words are employed in a stat-

ute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary.' ") (quoting *Standard Oil Co. v. United States,* 221 U.S. 1, 59, 31 S.Ct. 502, 55 L.Ed. 619 (1911)); *see also Neder v. United States,* 527 U.S. 1, 21, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (noting that where Congress uses terms with settled meanings, "a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms" (internal quotation marks omitted)).

Rule 49(b) provides that service "shall be made in the manner provided in civil actions," which, in turn, declares that, "[s]ervice by mail is complete *on mailing.*" Fed.R.Civ.P. 5(b)(2)(B) (emphasis added). Because Congress has defined what it means by service, we have no authority to require more. In fact, to do so here would create a conflict with the two other circuits that have confronted the question and held that, to satisfy section 851(a)'s service requirement, the government need only show that it "mailed the information to [defense] counsel, and not that defense counsel actually received [it]." *United States v. Kennedy,* 133 F.3d 53, 59 (D.C.Cir.1998); *see also United States v. White,* 980 F.2d 836, 840 n. 8 (2d Cir.1992) (holding that section 851 is satisfied even where defendant received service after trial began, so long as service was mailed before trial).

■ Here, the government attached a certificate of service to its original information; Severino does not contest that both documents were filed before the start of the plea hearing. The person who signed the certificate of service stated under oath that he mailed a copy of the information to defense counsel prior to filing. Severino questions whether the in-

formation was in fact mailed before the hearing, but offers no evidence casting doubt on the government's certificate. The certificate thus remains the only evidence in the record of when the served copy was mailed to the defendant. Had Severino offered evidence that contested the declaration in the certificate of service, he may have been entitled to an evidentiary hearing on this point, but he did not. The unchallenged certificate is therefore sufficient to establish that the information was placed in the mail prior to the hearing.

In any event, Severino's principal contention is that service isn't complete when the document is mailed. If the purpose of the statute is to provide notice, Severino argues, then it doesn't make much sense to have the document reach him after it's too late to do him any good. Congress therefore must have intended that service is not complete until defendant actually receives it.

This argument proves too much. The possibility that a mailed document may not reach the intended recipient until it's too late is not unique to our situation; it arises whenever a document is served by mail. The party being served will not benefit from the service if the document is mailed too close to the date of the hearing to which it pertains, is delayed in transit or is lost altogether. Even if the document does reach the opposing party before the hearing, it may nonetheless get there too late to give the recipient sufficient time to prepare a response. Rule 49(b) neverthe-less specifies that service by mail is complete upon mailing. Obviously, the service requirement is designed to provide timely notice in ordinary circumstances, but not to guarantee adequate notice in every case.[4]

To be sure, when the statutory requirement of service is satisfied, this does not always mean that the independent constitutional requirement of adequate notice has been satisfied as well. In most instances the two will coincide but, where they do not, the party who was properly served yet received inadequate notice (such as where the document is lost in the mail) will be entitled to an accommodation to make up for any prejudice resulting from the failure of notice.

 Here, the statutory requirement of service was satisfied when a copy of the information was placed in the mail prior to the hearing. Obviously, this was too late to give Severino advance notice of its contents, much less time for him and his lawyer to prepare a challenge to the offense changed therein. Indeed, had Severino and his counsel been unaware of the possibility that the prior conviction would be raised as an enhancement, even physical service by fax or messenger on the morning of the plea hearing may still have provided inadequate notice. But Severino and his counsel were well aware of the drug prior, and were fully expecting to have it raised at the change-of-plea hearing. They had obviously discussed the

**4.** No doubt, the rule that service is complete upon mailing is based in large part on considerations of administrative convenience. A party must file a certificate of service at the time it files the served document, and it is fairly easy to certify that service has been completed by placing a copy thereof in the mail. It would be a far more difficult matter to certify service if it were complete only upon receipt. Service by mail would then become virtually impossible because the send-ing party would seldom be able to declare under oath that a document has been received by the opposing party. Most routine documents would have to be served by personal courier and, even then, could not be filed until and unless the process server confirms that the document had actually been received. The drafters of Rule 49(b) no doubt believed that the additional benefit from requiring actual receipt wasn't worth the additional inconvenience.

matter before the hearing and concluded that there was no legitimate way to challenge the conviction. Moreover, the Assistant United States Attorney recited the substance of the information over the phone at the hearing. Had Severino or his counsel then raised an objection to proceeding with the change-of-plea hearing because of inadequate notice, they would probably have been entitled to a postponement. But Severino and his lawyer did the precise opposite: They made it quite clear they were aware of the issue, they were not surprised in any way and had had adequate time to consider what to do about it. They did not ask for a continuance, or even a recess, to discuss the matter. We must therefore conclude that notice was adequate and, because service was completed before the hearing in accordance with Rule 49(b), the statutory requirement of service was satisfied as well.[5]

### III

■ A. Severino correctly points out that the district court erred by failing to ask him if he affirmed or denied his previous conviction, and by failing to "inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." 21 U.S.C. § 851(b).[6] Because Severino did not object, we consider whether the error affected his "substantial rights." *See United States v. Olano,* 507 U.S. 725, 734–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *see also* Fed. R.Crim.P. 52(b).[7]

The Supreme Court has made clear that the default rule—assumed unless the statute expressly provides otherwise—is that rights can be waived, both in the affirmative sense (explicit waiver) and by failing to object to error (default or forfeiture). As *Olano* held, "No procedural principle is more familiar to this Court than that a constitutional right, or a right of any sort, may be forfeited in criminal as well as civil cases . . . ." 507 U.S. at 731, 113 S.Ct. 1770 (quoting *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944) (internal quotation marks omitted)); *cf. United States v. Mezzanatto,* 513 U.S. 196, 201, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995) ("[A]bsent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver."). It follows that harmless error review is presumed to apply. *See Jones v. United States,* 527 U.S. 373, 388–89, 119 S.Ct. 2090, 144 L.Ed.2d

---

5. We need not decide whether a section 851(a) error can be waived or forfeited by a defendant, so it remains an open question in our circuit. *Hamilton* required strict compliance to *satisfy* the statute, but said nothing about waiver or forfeiture, as the defendant there actually objected to the adequacy of the government's information, and we found that the information complied with the statute. *See* 208 F.3d at 1167–69.

6. Severino preserved this issue by raising it in his first appeal; we didn't address it at that time because we vacated his sentence on other grounds. *See Severino,* 1999 U.S.App. LEXIS 34564, at *3.

7. It's a bit strange to require that a defendant object to the district court's failure to give him an admonition. After all, if the defendant knows to object, he doesn't need the admonition in the first place; it's the defendant who fails to object that needs the admonition most. Nevertheless, we feel bound by *United States v. Vonn,* 535 U.S. 55, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002), where the Supreme Court rejected the same argument in the Rule 11 context. *See* 122 S.Ct. at 1054 n. 10 (noting that it is "fair to burden the defendant with his lawyer's obligation" to understand and object to failings in the admonition, and that although "an uncounseled defendant may not, in fact, know enough to spot a Rule 11 error, . . . when a defendant chooses self-representation after a warning from the court of the perils this entails, Rule 11 silence is one of the perils he assumes" (citation omitted)).

370 (1999) (applying default forfeiture rules where the statute does not "explicitly announce an exception to plain-error review"); *Olano*, 507 U.S. at 731, 113 S.Ct. 1770. Even those courts holding that section 851(a)'s requirements are "jurisdictional" accept that harmless error doctrine applies to section 851(b). *See, e.g., United States v. Gonzalez–Lerma*, 71 F.3d 1537, 1540–41 & n. 4 (10th Cir.1995) (*Gonzalez–Lerma II*).

▮ Here, Severino admitted—more than once—that he had no way to challenge the validity of the prior conviction. He walked into the plea agreement voluntarily, aware that he was almost certainly going to be subject to a mandatory minimum on account of the prior. Severino cannot plausibly argue that he would have done anything differently, had the district court properly asked him to affirm or deny the prior conviction, or had the district court informed him that he would lose the right to challenge that conviction upon accepting the plea. The error was harmless.

▮ **B.** Finally, Severino claims that he was prejudiced by his counsel's failure to object to the adequacy of the information. Such a claim—in reality a charge that counsel was ineffective—is usually better reserved for collateral review, where the facts and record can be appropriately developed. *See United States v. Karterman*, 60 F.3d 576, 579 (9th Cir. 1995). On these facts, however, we can at least say this: Because we hold that the information satisfied section 851(a), Severino's ineffective assistance claim, to the extent that it relies on counsel's failure to object to the information, necessarily fails: There can be no error in failing to object to an adequate information. Other claims of ineffective assistance we leave for possible exploration in a future petition for collateral review.[8]

**AFFIRMED.**

THOMAS, Circuit Judge, with whom Circuit Judges REINHARDT, BERZON, and RAWLINSON join, dissenting:

Congress has mandated that the government must comply with 21 U.S.C. § 851(a) before a court may increase the sentence on the basis of a prior conviction. Because the government did not do so in this case, the district court erred in imposing the mandatory minimum sentence. Therefore, I respectfully dissent.

I

The requirements of 21 U.S.C. § 851(a) are unambiguous and specific: Before a sentence is enhanced, the government must file an information "stating in writing the previous conviction or convictions upon which it intends to rely."[1] *Id.* The consequences for neglecting to adhere to the statutory requirements are also clear: "If the requirement is not satisfied, a court may not enhance a sentence even if the defendant has prior felony drug convictions." *United States v. Hamilton*, 208 F.3d 1165, 1168 (9th Cir.2000), *cert. denied*, 531 U.S. 867, 121 S.Ct. 164, 148 L.Ed.2d 111 (2000). In *Hamilton*, we restated the rule in our circuit that § 851(a)

---

**8.** Severino may have waived these claims by failing to raise them in his first 2255 petition, where his claim of ineffective assistance was limited to a claim that counsel had failed to advise him of his right to appeal the sentence. We leave this question for another day.

**1.** The statute reads in full: "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a).

"requires strict compliance with the procedural aspects." *Id.* at 1169.

The primary difficulty with determining that the government complied with the procedural requirements of § 851(a) is that everyone acknowledges that it didn't. The record is quite clear that the United States failed to serve the amended information prior to Severino's change of plea hearing. Indeed, the district court specifically found this fact in its order denying Severino's § 2255 motion, stating plainly that: "Cooper [the government attorney] was not able to have Dayan [Severino's lawyer] or Severino *served* with copies of the information prior to the commencement of the Rule 11 plea hearing." (emphasis added).

Further, the Assistant United States Attorney admitted at the change of plea hearing that he was "having some difficulty" with the requirements of § 851. He stated that he had filed an information that day, but remarked "I am not very confident that I have all the information that should be in that type of information," and that "the shortness of getting these proceedings on has prevented me from getting this into the hands of the Court and counsel before this proceeding." Thus, it is undisputed that neither Severino nor his counsel received a copy of the information prior to the change of plea hearing.

The government now relies on the service by mail rule. *See* Fed.R.Crim.P. 49(b) (incorporating Fed.R.Civ.P. 5(b)). It did not present that argument to the district court, and the record is devoid of any evidence that the information was, in fact, mailed before the hearing. The best the government can offer is the form certificate of service attached to its filing; however, that only indicates that the information was mailed the date of the hearing. This is insufficient to warrant setting aside on appeal the district court's factual finding that neither Severino nor his lawyer were served with the information prior to the change of plea hearing, as required by § 851(a). Absent a district court finding that service occurred prior to the hearing, the court was without statutory authority to impose the enhanced sentence. *Hamilton*, 208 F.3d at 1169 (noting the service requirements of the statute).

That should end the matter. However, even if the government could produce positive proof that it filed the § 851 information and mailed a copy to Severino before his 10 a.m. plea hearing, such service would not comport with due process requirements. "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). To comport with due process, "[t]he notice must be of such nature as reasonably to convey the required information." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Section 851 was enacted, in part, to fulfill this due process requirement. The statute "ensures proper notice so a defendant is able to challenge the information" and "allows a defendant to make an informed decision about whether or not to plead guilty." *Hamilton*, 208 F.3d at 1168. It also permits a defendant "to plan his trial strategy with full knowledge of the consequences of a potential guilty verdict." *United States v. Johnson*, 944 F.2d 396, 407 (8th Cir.1991).

If a criminal defendant is to be subjected to additional years—perhaps decades—in prison because of prior convictions, he must be afforded a meaningful opportunity to contest them. A defendant is entitled to notice, as well as a hearing. Slipping an envelope into a mailbox seconds before a hearing is not constitutionally adequate notice.

## II

In the context of this case, the obvious question is why this matters. After all, Severino's counsel at the time seemed to be doing everything he could to ensure that Severino would receive the sentence enhancement, and Severino didn't seem to be voicing any personal objection. The answer is twofold. First, the information filed by the government was incorrect and could not have served as a basis for sentence enhancement and, upon a careful examination of the record, it is not apparent at all that Severino was making an informed choice to forfeit his right to challenge the information. Second, because of the peculiar limitations of § 851(a), the district court did not have authority to impose the sentence enhancement absent compliance with the procedural predicates. Thus, it was plain error for the court to impose a sentence in excess of statutory authority.

### A

The government's information was not only untimely served, but it was inaccurate. The information filed on the hearing date stated the predicate conviction as: "Possession of 1 ounce to 1 kilogram of cocaine, Massachusetts, 1992–1993." However, Severino had not been convicted of that crime. His only alleged criminal activity in Massachusetts was Operating a Motor Vehicle Without a License and Operating an Uninsured Motor Vehicle—and he had not been convicted of those traffic offenses. Thus, Severino had a very legitimate basis on which to challenge the proposed sentence enhancement. However,

Severino could not know that, of course, because he had not been served with the information prior to the hearing.

His attorney did not appear to be any more enlightened, indicating only that he knew of a conviction "back East." Severino was not asked by the district court whether he understood he had a right to challenge the information. When his attorney was questioned by the district court as to whether he had discussed the right with Severino, he responded only that he had informed Severino that the government needed a conviction.

There is no doubt that Severino and his attorney were having difficulty communicating. Indeed, we previously vacated Severino's sentence and remanded for re-sentencing because neither the district court nor Severino's counsel had informed Severino of his right to appeal his sentence. *United States v. Severino*, No. 99–35161, 1999 WL 1278048 (9th Cir. Dec. 30, 1999). Severino's counsel acknowledged at the plea hearing that he had encountered difficulty in explaining the Sentencing Guidelines, not only because Severino could not speak English, but because "he had never seen a graph before." However, his counsel represented to the court that Severino "seemed to understand" how the *Guidelines* worked after the interpreter explained it to him. There is no indication in the record that the interpreter had explained to Severino that a statutory mandatory minimum sentence would be imposed in lieu of the Guideline calculation.

The record reflects confusion at both the change of plea and sentencing hearing on the part of almost everyone.[2] Both hear-

---

2. As the majority properly notes, the district court also erred in this case by not informing Severino, as required by § 851(b), "that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence."

However, in contrast to § 851(a), Congress did not condition judicial sentencing power on procedural compliance with § 851(b). Therefore, unlike § 851(a) procedural defects, a claim that the district court failed to comply with § 851(b) is subject to plain error review.

ings proceeded with long colloquies about the Sentencing Guidelines, rather than the imposition of a mandatory minimum sentence.

At the change-of-plea hearing, for example, the district court noted that the plea agreement "does not set out the parties' prediction or understanding of how the guidelines would work beyond an agreement to the quantity of drugs." The government prosecutor agreed that statement was "essentially correct." When asked by the court what the government's estimate of Severino's criminal history category would be, government counsel responded: "I have some indication there is a criminal history, but I really do not feel adequately advised to say what his criminal history is." Thereupon, the court explained in detail how Severino's criminal history would affect the Sentencing Guideline calculation, how acceptance of responsibility might affect the calculation, and how his level of participation might affect a sentence under the Guidelines.

Indeed, the change-of-plea hearing might well have concluded without any mention of a potential mandatory minimum sentence had defense counsel not interrupted the proceedings to point out that there was a conviction "back East" that might bring in a mandatory minimum. Later, when the prosecutor informed the district court it was having "some difficulty" with § 851, he identified the erroneous Massachusetts conviction as the sole basis for the sentence enhancement. When asked by the district court whether the information referenced the same conviction that defense counsel had mentioned earlier, the prosecutor replied, "I believe it probably does." The district court then inquired of defense counsel whether that was the conviction he had earlier referenced, defense counsel stated: "That's the

one, your Honor," and later affirmed that "[t]hat's the one I was referring to when I said back East, your Honor." Of course, as we know now, there was no Massachusetts conviction.

In sum, the change-of-plea hearing began with an extensive discussion of how criminal history would affect the imposition of a sentence under the Sentencing Guidelines, and concluded with everyone agreeing that a mandatory minimum sentence was proper based on a non-existent conviction. Under these circumstances, it is quite difficult to conclude that the Spanish-speaking, illiterate defendant, who had never seen a graph before, was making an informed decision.

At the sentencing hearing, confusion again prevailed. The district court once again conducted a thorough Sentencing Guideline analysis, and entertained a defense argument for downward adjustments, all of which would be irrelevant in a mandatory minimum case. After considering the arguments of counsel, the district court was just beginning to impose a sentence within the Guideline range of 70–87 months, when defense counsel interrupted to explain that he thought the sentence should be longer, based on the mandatory minimum requirement. The colloquy is instructive:

> THE COURT: (continuing) That will therefore put him in a criminal history category of 3 and a offense level, total offense level of 25, which makes him vulnerable to a sentence of 70 to 87 months. The parties have not agreed on a particular sentence.
>
> DEF. ATT.: Your Honor.
>
> THE COURT: Yes.
>
> DEF. ATT.: I'm sorry to interrupt. He does have a previous conviction, so I think—

However, because Severino could have maintained a successful challenge to the erroneous

information, he would still be entitled to relief on account of the § 851(b) errors.

[colloquy with interpreter omitted]

THE COURT: Yeah, he was in a criminal history category of 3?

DEF. ATT.: No, I'm thinking that it's a mandatory 10 years—

THE COURT: Oh, is it?

DEF. ATT: I think it—

PROSECUTOR: We'd—I'd have to check the statute, but there would be a statutory minimum due to the existence of the prior.

THE COURT: And the prior was a drug prior?

DEF. ATT.: Yes, it was.

PROSECUTOR: Yes, and we filed an information on that, Your Honor.

THE COURT: Okay, so then it's the 121 months.

In short, the district court did not proceed at sentencing as though a mandatory minimum sentence applied, and appeared surprised when defense counsel interrupted to suggest that his client should do more time than the district court was contemplating. Asked whether a mandatory minimum might be applicable, the government's counsel's said he would "have to check the statute."

Given this general confusion even among counsel and the district court at both the change-of-plea hearing and the sentencing, it is difficult to believe that Severino was making an informed choice at his change-of-plea hearing, which is the central point of the notice requirements of § 851(a).

Indeed, the plain fact is that if the mandatory minimum sentence had not been required in this case, the district court would have likely imposed a lighter sentence. The district court initially had been poised to impose a sentence within the 70 to 87 months range, and also noted at re-sentencing:

> Now, as I mentioned a moment ago, in fairness to Mr. Severino, if I did have discretion, if the 10–year mandatory minimum was not in effect, then there's no question the Court would give him a better sentence.

### B

The second reason that the government's failure to serve Severino is important in this case is that § 851(a) is not merely a procedural statute, the violation of which might lend itself to an examination under a plain error analysis. *See, e.g., United States v. Vonn*, 535 U.S. 55, 122 S.Ct. 1043, 1054, 152 L.Ed.2d 90 (2002). Rather, Congress specifically crafted § 851(a) to deny the federal courts the power to enhance a sentence unless the procedural requirements were met.[3] Not

---

**3.** The vast majority of circuits have concluded that Congress has established an absolute, non-waivable mandate that bars courts from enhancing sentences under § 851(a) unless the government has complied with its requirements. *See, e.g., United States v. Layne*, 192 F.3d 556, 575 (6th Cir.1999), *cert. denied*, 529 U.S. 1029, 120 S.Ct. 1443, 146 L.Ed.2d 330 (2000) ("The requirement is mandatory, and a district court cannot enhance a defendant's sentence based on a prior conviction unless the government satisfies the requirement.") (citing *United States v. Williams*, 899 F.2d 1526, 1529 (6th Cir.1990)); *Harris v. United States*, 149 F.3d 1304, 1306 (11th Cir.1998) ("The Eleventh Circuit and its predecessor court have unambiguously and repeatedly held that a district court lacks jurisdiction to enhance a sentence unless the government strictly complies with the procedural requirements of § 851(a)."); *United States v. Kennedy*, 133 F.3d 53, 59 (D.C.Cir.1998) ("Put succinctly, '[a] prosecutor's compliance with § 851(a)(1) is simply a necessary condition to a judge's imposing an enhanced sentence on the basis of a defendant's prior convictions.'") (quoting *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (D.C.Cir.1996)); *United States v. Steen*, 55 F.3d 1022, 1025 (5th Cir. 1995) ("If the prosecution fails to comply with § 851's procedural requirements, a district court cannot enhance a defendant's sentence."); *United States v. Gonzalez–Lerma*, 14

only do courts lack power to impose sentences in excess of statutory authority, *United States v. Doe*, 53 F.3d 1081, 1083–84 (9th Cir.1995), but the imposition of a sentence in excess of statutory authority constitutes plain error. *United States v. Guzman–Bruno*, 27 F.3d 420, 423 (9th Cir. 1994). Thus, if the procedural requirements of § 851(a) are not satisfied, the district court has no authority to impose an enhanced sentence, and the imposition of such a sentence would constitute plain error.[4]

A brief review of the legislative history underscores this point. The § 851(a) procedure—and the penalty prescribed for failure to follow it—is in "sharp contrast" with its predecessor statute. *United States v. Olson*, 716 F.2d 850, 853 (11th Cir.1983). Prior to 1970, federal law required the United States Attorney, in a drug case, to advise the court after conviction but before sentencing whether the defendant was a recidivist and therefore subject to a mandatory enhanced sentence. 26 U.S.C. § 7237(c)(2) (1964). The prior law was based on a mandatory minimum sentencing scheme under which prosecutorial discretion did not play a role. As the Fifth Circuit described it:

> The thrust of prior law, which required minimum sentences, was mandatory enhancement. The United States attorney was required to advise the court whether the defendant was a first offender. The court was required to enhance the sentence of a multiple offender, whether

or not the prosecutor or the court thought enhancement was desirable or necessary.

*United States v. Noland*, 495 F.2d 529, 532 (5th Cir.1974).

Under the prior statute, prosecutors had no choice in deciding whether to seek enhanced sentences based on prior convictions: the statute required the courts to impose sentence enhancement. Accordingly, notifying the defendant of the prosecutor's intent would have been superfluous.

Consistent with the theory of mandatory minimums, the prior statute was also "silent ... as to the consequences of non-filing of the information prior to imposition of sentence." *United States v. White*, 980 F.2d 836, 846 (2d Cir.1992) (Kearse, J., dissenting). It was "in this context of congressionally ordained mandatory enhancement that prior cases upheld enhanced sentences despite procedural defects which did not infringe the defendant's right to deny and litigate his status." *Noland*, 495 F.2d at 533. Accordingly, a number of circuits held under the prior law that the government's failure to timely file an information seeking sentence enhancement was harmless error. *See, e.g., King v. United States*, 346 F.2d 123, 124 (1st Cir.1965); *United States v. Bell*, 345 F.2d 354, 357 (7th Cir. 1965); *United States v. Duhart*, 269 F.2d 113, 116 (2d Cir.1959); *Knight v. United States*, 225 F.2d 55, 57 (9th Cir.1955).

F.3d 1479, 1485 (10th Cir.1994) ("Failure to file the information prior to trial deprives the district court of jurisdiction to impose an enhanced sentence.") (quoting *United States v. Wright*, 932 F.2d 868, 882 (10th Cir.1991)); *Neary v. U.S.*, 998 F.2d 563, 565 (8th Cir. 1993) ("the statute prohibits an enhanced sentence unless the government first seeks it by properly filing an information prior to trial ...."); *but see Prou v. United States*, 199 F.3d 37, 45 (1st Cir.1999) (prosecution's failure to

timely file § 851(a) information does not deprive district court of subject-matter jurisdiction).

4. For this reason, the question that has occupied a few circuits—whether the requirements of § 851(a) are jurisdictional in nature—is beside the point. If a court imposes a sentence outside the authority granted by Congress, it has committed plain error and reversal is required.

The Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801–971, ("the Act") radically altered existing law and procedure. The "one major goal of the Act was to make more flexible the penalty structure for drug offenses." *Noland,* 495 F.2d at 532–33. "The purpose was to eliminate 'the difficulties prosecutors and courts have had in the past arising out of minimum mandatory sentences.'" *Id.* at 533 (quoting H. Rep. No. 91–1444, 1970 U.S. Code Cong. & Admin. News, pp. 4566, 4576). The theory of the Act was to eliminate mandatory sentences and to invest prosecutors with discretion as to whether to seek enhanced sentences and which prior convictions to invoke. *Id.* Thus, the statutory scheme was completely everted: Rather than requiring courts to impose mandatory minimums regardless of prosecutorial desire, courts were prohibited from enhancing sentences unless the government had timely filed an information stating that it intended to seek an enhanced sentence based on specific prior convictions.

In contrast to the prior statute's silence about procedural error, the Act specifically addressed the issue. Section 851 provides a remedy for "clerical mistakes," which may be corrected by filing an amended information prior to the pronouncement of sentence. 21 U.S.C. § 851(a)(1). However, significantly, the Act did not allow the court to excuse or to allow waiver of a failure by the government to timely file an information identifying the crimes. The Act only allows the court to "postpone the trial or the taking of the plea of guilty for a reasonable period" and only then "[u]pon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty." *Id.* Thus, in this case, when uncertainties arose about the content and service of the information at the change-of-plea hearing, the remedy was to postpone the hearing.

The new procedural restrictions are firmly rooted in the theory of the Act, which shifted responsibility from judges to impose Congressionally-mandated sentences to prosecutors who were to decide whether to seek enhanced sentences. Under the new statutory scheme, "the district court has no authority to exercise or pretermit" the exercise of executive discretion. *United States v. Olson,* 716 F.2d 850, 853 (11th Cir.1983). Therefore, "[u]nless and until prosecutorial discretion is invoked and the government files and serves an information as required by § 851, the district court has no power to act with respect to an enhanced sentence; it can no more enhance the sentence than it could impose imprisonment under a statute that only prescribes a fine." *Id.* "Harmless error cannot give the district court authority it does not possess." *Id.*

The Act's limitations on judicial authority are founded on the separation of powers in two respects: (1) the power of Congress to define criminal sentences; and (2) the power of the executive branch to control prosecutions. As to the power of Congress, it is "indisputable" that "the authority to define and fix the punishment for crime is legislative." *Ex parte United States,* 242 U.S. 27, 42, 37 S.Ct. 72, 61 L.Ed. 129 (1916). It is by legislative action that crimes and criminal procedure are defined: a court has no power to impose a sentence in excess of statutory authority. *See United States v. Doe* 53 F.3d 1081, 1083–84 (9th Cir.1995).

By granting the executive branch discretion to decide whether a sentence enhancement should be sought, the Act concomitantly removed that authority from the judiciary. Just as courts cannot commit an unindicted person to prison, courts cannot enhance a sentence under § 851 until the government elects formally to proceed. *Olson,* 716 F.2d at 853. In this context, to

allow courts to impose a sentence without the valid exercise of executive discretion violates separation of powers. As we have previously observed, "separation of powers concerns prohibit us from reviewing a prosecutor's charging decisions absent a prima facie showing that it rested on an impermissible basis, such as gender, race or denial of a constitutional right." *United States v. Palmer*, 3 F.3d 300, 305 (9th Cir.1993). Indeed, absent such a showing, "we have no jurisdiction to review prosecutors' charging decisions ...." *United States v. Oakes*, 11 F.3d 897, 899 (9th Cir.1993). Until the executive branch validly exercises its option under the Act to seek a sentence enhancement, the courts are powerless to impose one.

Thus, as a matter of statutory construction, it is clear that Congress intended to alter the prior procedures and to impose non-waivable, mandatory requirements. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995). We also presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation. *United States v. Hunter*, 101 F.3d 82, 85 (9th Cir.1996). Further, "a particular statutory provision must be read in context with a view to its place in the statutory scheme." *Gorbach v. Reno*, 219 F.3d 1087, 1093 (9th Cir.2000). Finally, and perhaps most importantly, we generally presume that "Congress 'says in a statute what it means and means in a statute what it says there.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). Given the plain language of § 851(a), its structure (namely, the specific remedies provided for procedural violations), the substantive alteration from pri-

or law, and the import of judicial construction, there is no doubt that Congress meant what it said in providing that no person could be subjected to enhanced penalties based on prior convictions unless the government timely filed and served an information identifying the convictions upon which it intended to rely. For this reason, a violation of the procedures required by § 851(a) cannot be treated as procedural aberrations subject to a *Vonn* analysis.

In this case, the government's failure to comply with the service provisions of § 851(a) deprived the district court of the authority to impose an enhanced sentence. In exceeding its statutory sentencing power, the district court necessarily committed plain error and vacation of the sentence is required.

For these reasons, I respectfully dissent.