**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

ARMANDO LABRADA-BUSTAMANTE,
        *Defendant-Appellant.*

No. 04-30082

D.C. No.
CR-03-02098-EFS

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee-*
        *Cross-Appellant,*

v.

CATALINO BARANDA-GALLARDO,
        *Defendant-Appellant-*
        *Cross-Appellee.*

Nos. 04-30159
        04-30189

D.C. No.
CR-03-02099-EFS

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

ROBERTO DUARTE-CRUZ,
        *Defendant-Appellant.*

No. 04-30175

D.C. No.
CR-03-02097-EFS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted
April 4, 2005—Seattle, Washington

Filed November 10, 2005

15259

Before: Ronald M. Gould, Richard C. Tallman, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Rawlinson

**COUNSEL**

Nicholas Marchi, Carney & Marchi, P.S., Kennewick, Washington, for appellant Armando Labrada-Bustamante.

James E. Egan, Kennewick, Washington, for appellant Roberto Duarte-Cruz.

Sam Swanberg, Law Offices of Sam Swanberg, Kennewick, Washington, for appellant/cross-appellee Catalino Baranda-Gallardo.

K. Jill Bolton, Assistant United States Attorney, Yakima, Washington, for appellee/cross-appellant United States of America.

---

**OPINION**

RAWLINSON, Circuit Judge:

Defendants Armando Labrada-Bustamante (Labrada), Roberto Duarte-Cruz (Duarte), and Catalino Baranda-Gallardo (Baranda) were convicted by a jury in the United States District Court for the Eastern District of Washington of conspiracy to distribute a controlled substance, methamphetamine (meth), in violation of 21 U.S.C. § 846. After determining that the quantity of meth involved in the proposed sale was five pounds, the court sentenced both Labrada and Duarte to 151-month terms of imprisonment. Baranda was sentenced to a term of 87 months. The defendants appealed, and the government cross-appealed Baranda's sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons discussed below, we affirm the convictions, vacate the sentences, and remand to the district court for re-sentencing.

# I
## *FACTS AND PROCEDURAL HISTORY*

In February of 2003, Drug Enforcement Agent Alonzo Garza was contacted by an informant, who indicated that an individual in Phoenix, Arizona, was willing to bring approximately forty pounds of meth to Yakima, Washington. Agent Garza traveled to Phoenix and met with Jesus Martin Terrazas, who stated that he could supply the amount of meth through a man named Roberto. Terrazas then introduced Agent Garza to Duarte and Labrada.

Labrada told Agent Garza that he could supply the forty pounds of meth, but, because the two did not know each other, he preferred to start with five pounds. Labrada quoted Agent Garza a price of $12,000 per pound—more expensive than the meth in Yakima because, according to Labrada, it was pure and coming directly from Mexico. Labrada also stated that Agent Garza could "cut it up to four times," making four pounds out of one.

Terrazas was subsequently arrested in Yakima during a meth transaction not involving Labrada or Duarte. Choosing to cooperate with the government, he contacted Duarte on behalf of Agent Garza to arrange a delivery of meth to Garza in Yakima. Agent Garza and Duarte spoke several times to discuss the delivery of the five pounds of meth. Duarte told Agent Garza during one conversation that he could provide him with ice methamphetamine (ice) as well. They agreed that one pound of ice would be delivered in addition to the five pounds of meth. Although delivery was arranged, the drug deal was never consummated. The two sides lost contact until Duarte phoned Agent Garza to inquire whether Agent Garza was still interested in buying the meth. When Agent Garza replied that he was, the sale of five pounds of meth for $12,000 was again agreed upon.

Duarte called Agent Garza again because, according to Duarte, his "source" wanted to talk. Agent Garza identified

that source as Labrada. Labrada indicated that he had a "hand" and "five fingers"—drug lingo for five pounds of product. Duarte and Labrada drove to Las Vegas to pick up Baranda, who then drove the three to Portland, Oregon. From Portland, Duarte contacted Agent Garza to negotiate a meeting locale. Agent Garza, Duarte, and Labrada eventually met at a Denny's in Union Gap, Washington. Baranda remained in a motel room rented by the defendants.

During the meeting, possible future transactions were discussed, and Labrada asked Agent Garza if the agent could supply a car with Washington plates equipped with a hidden compartment. The discussion eventually shifted to how the present transaction would be finalized. Labrada assured Agent Garza that he would not abscond with the money, even offering to be held by Agent Garza for ransom. After numerous unsuccessful attempts to reach mutually agreeable terms, the meeting concluded. Even as they were leaving, however, Labrada attempted to consummate a deal. He told Agent Garza that there was more meth in Phoenix and that if things went well, he could simply make a call and the product would be brought up to Yakima.

After the meeting concluded, the Drug Enforcement Administration (DEA) instructed the Washington State Patrol to stop defendants' car.[1] DEA Agent Meliton Rodriguez, the local agent overseeing the investigation and undercover operation, arrived on the scene a few minutes after the stop. Agent Rodriguez, a native Spanish speaker, individually advised each defendant of his *Miranda*[2] rights in Spanish using a DEA Form 13A.[3] Duarte and Labrada said nothing in response except that they understood their rights. In response to Agent Rodriguez's suggestion that he knew Duarte and Labrada

---

[1] By this time, Baranda had reunited with Duarte and Labrada.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] A DEA Form 13A states the *Miranda* warnings in both English and Spanish.

were in Yakima to sell meth, Baranda asked, "[d]id you ever think that there might be another car involved?" Baranda consented to a search of the vehicle; no drugs or weapons were found.

The defendants were taken to the DEA offices in Yakima, where Rodriguez separately interviewed each one. During questioning, Baranda admitted that he knew he was going to Washington to be involved in a drug deal. Duarte did not respond when told that the DEA knew he was involved in a drug deal. However, when asked if it was his intent to simply steal the money from Agent Garza, Duarte responded that it was not. Labrada admitted to Agent Rodriguez that he was in Yakima to do a drug deal with Agent Garza. When asked about the location of the meth, Labrada indicated that it was with a man named Ernesto, the source supplier of meth in Yakima. However, Ernesto was never located.

Duarte, Labrada, and Baranda were charged with one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846. Labrada filed a motion to suppress statements made by him to Agent Rodriguez, which Duarte joined. At the suppression hearing, Agent Rodriguez testified that he read the *Miranda* warnings to each defendant, in Spanish and using a DEA Form 13A. He further testified that before questioning the defendants, he reminded them of their rights, summarized those rights, and asked them whether they understood those rights. Each defendant indicated that he did. No threats or promises were made to any of the defendants during the interviews.

Agent Gilliam, who was present during the interviews, corroborated Agent Rodriguez's testimony. Agent Gilliam testified that no defendant expressed any confusion about what those rights meant. The district court specifically found that Agent Rodriguez read each defendant his rights at the initial stop, summarized those rights at the station, and elicited a response that each defendant understood his rights. After con-

sidering the totality of the circumstances, the court ruled that the defendants' statements were voluntary, and the motion to suppress was denied.

After a three-day jury trial, the defendants were convicted as charged. For sentencing purposes, the court used the agreed upon amount of meth—five pounds—resulting in a base offense level of 34 and a sentence range of 151 to 188 months. U.S. Sentencing Guidelines Manual (USSG) § 2D1.1(c)(3) (2002).[4] Labrada and Duarte were each sentenced to 151-month terms of imprisonment. Baranda was sentenced to 87 months in prison after the court sustained Baranda's collateral challenge to the California felony drug conviction used to calculate Baranda's criminal history score.

Labrada now challenges the district court's denial of his motion to suppress and his Rule 29 motion based on the sufficiency of the evidence. He also contends that he received ineffective assistance of counsel during sentencing and that the district court violated his Sixth Amendment rights by sentencing him based on a quantity of meth not found by the jury beyond a reasonable doubt. Duarte similarly challenges the denial of the motion to suppress and the district court's drug quantity determination. Duarte also contends that the "safety valve" factors under 18 U.S.C. § 3553(f) are unconstitutional because their consideration requires findings of fact by the district court and not a jury. Finally, Baranda challenges his sentence because it is based upon a factual finding, the quantity of meth, made by the district court and not a jury.

The government cross-appeals Baranda's sentence on the basis that the district court erred in allowing Baranda to collaterally challenge his prior conviction.

---

[4]It appears that the defendants were sentenced using the 2002 version of the Guidelines. However, this section is the same in the 2002, 2003, and 2004 versions of the United States Sentencing Guidelines. *See* USSG § 2D1.1(c)(3) (2002); USSG § 2D1.1(c)(3) (2003); USSG § 2D1.1(c)(3) (2004).

## II
## *DISCUSSION*

### A.  Labrada-Bustamante

#### 1.  Motion to suppress

Labrada challenges the district court's denial of his motion to suppress, asserting that he could not have voluntarily or knowingly waived his rights because, as a Mexican national, he was not familiar with the United States' justice system and did not understand what his rights meant.

A decision on a motion to suppress is reviewed *de novo*. *United States v. Charley*, 396 F.3d 1074, 1079 (9th Cir. 2005). "We review the voluntariness of a waiver of *Miranda* rights de novo." *United States v. Younger*, 398 F.3d 1179, 1185 (9th Cir. 2005) (citation omitted). "Whether the decision was knowing and intelligent is reviewed for clear error." *Id.* (citation omitted).

[1] The validity of a *Miranda* waiver depends on the totality of the circumstances and whether the defendant "was aware of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (citation and internal quotation marks omitted).

The district court credited Agent Rodriguez's testimony that each defendant stated awareness and understanding of his rights. We give "special deference" to credibility determinations and are "especially reluctant" to set aside such determinations. *United States v. Becerra-Garcia*, 397 F.3d 1167, 1172 (9th Cir. 2005) (citations omitted). In addition, Labrada acknowledged on cross-examination that he understood what it meant to have the right to remain silent.

[2] Agent Rodriguez was not required to explain to Labrada what the *Miranda* rights meant. The fact that Labrada might

not be familiar with the United States' form of justice is merely one factor to be considered. *See, e.g.*, *United States v. Frank*, 956 F.2d 872, 877 (9th Cir. 1991), *as amended*, (stating that "[w]hen considering the totality of the circumstances, relevant factors include age, experience, education, background and intelligence.") (citation, internal quotation marks, and alteration omitted). Considering the totality of the circumstances—including Agent Rodriguez's testimony and Labrada's admission that he understood his rights—the district court's finding that Labrada knew and understood his rights is not clearly erroneous.

**[3]** Labrada's *Miranda* waiver was also voluntary. There was no evidence in the record of "police overreaching," and both agents testified that no threats or promises were made to any of the defendants. *See United States v. Cazares*, 121 F.3d 1241, 1244 (9th Cir. 1997) (stating that "the voluntariness of a waiver has always depended on the absence of police overreaching.") (citation and internal quotation marks omitted). Therefore, we hold that the district court properly denied Labrada's motion to suppress.

## 2. Sufficiency of the evidence

Labrada contends that because there was no meth ever found on him or his co-defendants, and because he continually maintained that his true intent was to steal money, not sell meth, the evidence was insufficient to support the jury's finding that he intended to distribute a controlled substance.

"We review de novo the denial of a motion for a judgment of acquittal based on the alleged insufficiency of the evidence." *United States v. Pearson*, 391 F.3d 1072, 1075 (9th Cir. 2004) (citation omitted). "[V]iewing the evidence in the light most favorable to the government, we must determine whether any rational trier of fact could have found, beyond a reasonable doubt, the requisite elements of the offense charged." *Id.* (citation omitted).

**[4]** "To establish a drug conspiracy, the government must prove: 1) an agreement to accomplish an illegal objective and 2) the intent to commit the underlying offense." *United States v. Romero*, 282 F.3d 683, 687 (9th Cir. 2002) (citation omitted). In this case, the underlying offense was the distribution of fifty grams or more of meth. Thus, the government was required to prove that Labrada intended to distribute at least fifty grams of meth. "Culpable intent can be inferred from the defendant's conduct and from the surrounding circumstances." *United States v. Bucher*, 375 F.3d 929, 934 (9th Cir. 2004) (citations and alteration omitted).

**[5]** There was extensive evidence in this case from which a rational jury could infer that Labrada had the requisite intent to distribute meth. Agent Garza engaged in extensive negotiations for the sale of meth with both Labrada and Duarte. Labrada used expressions common in the drug trade and the defendants drove from Phoenix to Yakima to consummate the transaction. At the meeting in Washington, Labrada attempted to negotiate the exchange, even offering to remain with Agent Garza for ransom until the deal was completed. When negotiations stalled, Labrada persisted in attempting to make the sale. Finally, Labrada admitted to Agent Rodriguez that he was in Washington for a drug deal.

**[6]** Viewing this evidence in the light most favorable to the government, and drawing all reasonable inferences against Labrada, as we must, *United States v. Rodriguez*, 360 F.3d 949, 955 (9th Cir. 2004), the evidence was sufficient for a rational jury to find, beyond a reasonable doubt, that Labrada intended to distribute fifty grams or more of meth.

### 3. Ineffective assistance of counsel

"Effectiveness of counsel is a mixed question of law and fact, reviewed de novo." *United States v. Jeronimo*, 398 F.3d 1149, 1155 n.3 (9th Cir. 2005) (citation omitted). "[A]s a general rule, we do not review challenges to the effectiveness of

defense counsel on direct appeal." *Id.* at 1155 (citation omitted). However, we have developed "two extraordinary exceptions to this general rule: . . . (1) where the record on appeal is sufficiently developed to permit determination of the issue, or (2) where the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *Id.* at 1156 (citation omitted). The record in this case is sufficiently developed for us to determine that Labrada did not receive ineffective assistance of counsel.

**[7]** Labrada's ineffective assistance claim rests on his trial counsel's failure to submit written objections to the Presentence Report (PSR) before sentencing. Although Labrada's counsel did fail to submit written objections, he orally objected to portions of the PSR at the sentencing hearing. Although the district court stated that the objections should have been made in writing, it accepted and considered the objections nonetheless. In fact, the court sustained counsel's objection to the two-level obstruction of justice enhancement. Assuming, without deciding, that counsel's performance was deficient, because the court considered the objections, Labrada cannot make the requisite showing of prejudice, i.e., that the result of the proceeding would have been different. *See United States v. Fredman*, 390 F.3d 1153, 1156 (9th Cir. 2004) (stating that a defendant must show prejudice to establish a claim of ineffective assistance of counsel, meaning "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (citation omitted).

### 4.  Quantity of meth for sentencing

Labrada challenges the district court's use of five pounds as the quantity of meth involved in the offense for purposes of establishing his base offense level. He argues that this finding by the court violated his Sixth Amendment right to have a jury determine the quantity of drugs beyond a reasonable doubt. We "review de novo whether the district court violated

the constitutional rule articulated in *Apprendi*." *United States v. Smith*, 390 F.3d 661, 663 (9th Cir. 2004) (citation omitted).

**[8]** To comply with the requirements of the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). In *Blakely v. Washington*, 124 S. Ct. 2531 (2004), the United States Supreme Court explained that "the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id.* at 2537 (citations and internal quotation marks omitted) (emphasis in the original). The Court's decision in *Blakely* applies to the United States Sentencing Guidelines. *See United States v. Booker*, 125 S. Ct. 738, 746 (2005).

**[9]** Although the jury found the defendants guilty of conspiring to distribute only fifty grams or more of methamphetamine, Labrada admitted under oath that the amount of meth involved in the proposed sale was five pounds. Therefore, the use of five pounds to determine his base offense level violates neither *Apprendi* nor *Blakely*. *See id.* at 756 ("[W]e reaffirm our holding in *Apprendi:* Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict *must be admitted by the defendant* or proved to a jury beyond a reasonable doubt.") (emphasis added).

**[10]** Despite the lack of a Sixth Amendment violation, we vacate Labrada's sentence and remand his case to the district court for re-sentencing. At Labrada's sentencing hearing, the district court expressly advised the parties that the sentence was beyond his control. He stated, "[T]he kind of penalties that [the] Congress of the United States has imposed . . . are very, very severe and I have no control over those. You're

facing more than 12 years in prison which is an extraordinarily long time for a first offender on a case where — of a case involving the kind of behavior that this case involved . . .” In *United States v. Ameline*, 409 F.3d 1073, 1084 (9th Cir. 2005) (en banc), we held that a limited remand is appropriate, “where it is not possible to reliably determine from the record whether the sentence imposed would have been materially different had the district court known that the Guidelines were advisory . . .” On the other hand, re-sentencing is appropriate where we can reliably determine from the record that the sentence imposed would have differed materially. *See United States v. Crawford*, 422 F.3d 1145, 1146 (9th Cir. 2005). As Labrada’s case is one of those rare cases where the district court stated on the record that he felt compelled to impose a harsher sentence because of the mandatory nature of the Guidelines, a remand for re-sentencing is appropriate. *Id.*

## B.  Duarte-Cruz

### 1.  Motion to suppress

Like Labrada, Duarte challenges the voluntariness of his *Miranda* waiver. He maintains that his silence at the scene of the arrest, coupled with Agent Rodriguez’s failure to obtain an express statement of waiver, demonstrates that he did not voluntarily waive his rights. However, an express waiver is not required for a valid *Miranda* waiver. *See, e.g.*, *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (“Waivers of *Miranda* rights need not be explicit; a suspect may impliedly waive the rights by answering an officer’s questions after receiving *Miranda* warnings.”) (citation omitted). Duarte’s acknowledgment that he understood his rights, and the absence of “police overreaching,” persuade us that Duarte knowingly and intelligently waived his *Miranda* rights and that the waiver was voluntary.

### 2. The "safety valve" provision of 18 U.S.C. § 3553(f)

Duarte challenges the denial of his request for application of the "safety valve" provision of 18 U.S.C. § 3553(f) to avoid the ten-year statutory mandatory minimum provided in 21 U.S.C. § 841(b)(1)(A). Duarte does not quarrel with the district court's finding that he failed to give a truthful statement about the complete circumstances of the offense.[5] *Id.* Instead, he claims that the five factors enumerated in section 3553(f) are unconstitutional under *Blakely* because each requires a finding by a judge rather than a jury.

"The constitutionality of a statute is a legal question of law that we review de novo." *Younger*, 398 F.3d at 1192 (citation omitted). "[A]ny fact that *increases* the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (emphasis added).

**[11]** The statutory mandatory minimum sentences under 21 U.S.C. § 841(b) are not triggered unless and until a jury has found, beyond a reasonable doubt, the quantity of a controlled substance. *See United States v. Velasco-Heredia*, 319 F.3d 1080, 1086 (9th Cir. 2003) (stating that after *Apprendi*, the statutory mandatory minimum sentences under 21 U.S.C. § 841 do not apply "until the jury, or the court in a bench trial, finds beyond a reasonable doubt [ ] the quantity involved in the violation."). Because mandatory minimum sentences under section 841(b) presuppose a jury's determination of the underlying facts, their imposition does not offend either *Apprendi* or *Blakely*. *See United States v. Hitchcock*, 298 F.3d

---

[5]The last of five factors that the sentencing court must find under § 3553(f) states, in part, that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses . . . ." 18 U.S.C. § 3553(f)(5) (2000).

1021 (9th Cir. 2002), *as amended*, (holding that "mandatory minimums do not implicate *Apprendi*.") (citation omitted). Duarte would have us hold that facts allowing a *decreased* sentence below that mandatory minimum must be found by a jury beyond a reasonable doubt as well. Neither *Apprendi* nor *Blakely* compel such a holding. Therefore, we hold that the safety valve provision of 18 U.S.C. § 3553(f) is not unconstitutional under *Apprendi* or *Blakely*. However, because the district court sentenced Duarte under the then-mandatory Guidelines, we also vacate his sentence and remand for resentencing. As with Labrada, the district court expressly lamented the mandated sentence, stating that it was "struggling . . . because it would like to find a way to give [Duarte] less time." The court's statement justifies concluding that the sentence would have differed materially under advisory Guidelines. *See Ameline*, 409 F.3d at 1084.

### C.  Baranda-Galardo

The only issue raised by Baranda is whether the district court violated his Sixth Amendment rights by using five pounds of meth in determining his base offense level. Unlike Labrada or Duarte, Baranda never made an admission as to the quantity of meth involved in the proposed sale to Agent Garza. However, Baranda faced a statutory minimum sentence of twenty years predicated upon the jury's finding that the defendants conspired to distribute fifty grams of methamphetamine and upon Baranda's prior drug conviction. As a result, the court's attribution of five pounds of meth to Baranda did not constitute *Apprendi* error. *See Harris v. United States*, 536 U.S. 545, 557, 565 (2002); *see also United States v. Dare*, No. 04-30202, 2005 WL 2319653, at *8 (9th Cir. Sept. 23, 2005) (noting that *Booker* has no application to a mandatory minimum sentence and that the outcome of resentencing "could not possibly be different" where a mandatory minimum sentence is imposed).

### D.  Government's cross-appeal

As noted above, because Baranda had a prior felony drug conviction, he faced a mandatory minimum sentence of twenty years. *See* 21 U.S.C. § 841(b) (1999 & Supp. 2005). The district court allowed Baranda to collaterally attack the prior conviction, a decision that we review *de novo*. *See United States v. Hernandez-Vermudez*, 356 F.3d 1011, 1013 (9th Cir. 2004).

[12] Although a defendant may collaterally attack a prior conviction used to enhance his sentence,[6] no collateral challenge may be made if the prior conviction is more than five years old. 21 U.S.C. 851(e).[7] The district court allowed Baranda to attack the conviction for the purpose of computing criminal history points, and the court sustained the attack. As a result, Baranda had zero criminal history points, making him eligible for the "safety valve" provision of 18 U.S.C. § 8553(f).[8] The court found that Baranda satisfied the "safety valve" requirements and sentenced him to an 87-month prison term.

---

[6]Such a challenge is made under section 851(c), which states, in part:

> If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information . . . . The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment.

21 U.S.C. § 851(c).

[7]Section 851(e) states that "[n]o person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e). Baranda's prior conviction was entered on May 22, 1997, and the government's information in this case was filed on August 19, 2003.

[8]The first prerequisite for the "safety valve" provision is that the defendant not have more than one criminal history point. 18 U.S.C. § 3553(f)(1).

**[13]** Baranda concedes, as he must, that he could not collaterally attack his prior conviction as the district court allowed. *See United States v. Burrows*, 36 F.3d 875, 885 (9th Cir. 1994) (holding that a defendant cannot collaterally challenge a prior conviction used to calculate criminal history points); *see also Clawson v. United States*, 52 F.3d 806, 807 (9th Cir. 1995) (concluding that a defendant has "no constitutional right to collaterally attack the validity of a state conviction in a federal sentencing hearing on any basis other than denial of the right to counsel.") (citation omitted).

Although acknowledging the district court's error, Baranda argues that any sentencing error was harmless because there was insufficient evidence to prove he was involved in the conspiracy. This issue should have been raised in Baranda's opening brief and is therefore waived. *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief.") (citation omitted). In any event, Baranda's admission that he went to Washington to be involved in a drug deal was sufficient evidence of his involvement in the conspiracy. *See United States v. Alvarez*, 358 F.3d 1194, 1201 (9th Cir. 2004) ("When the evidence establishes that a conspiracy exists, there is sufficient evidence to support a conviction for knowing participation in that conspiracy if the government is able to establish, beyond a reasonable doubt, 'even a slight connection' between the defendant and the conspiracy.") (citations omitted).

Baranda's next claim is that the government failed to provide sufficient proof of his prior conviction. Because Baranda did not raise this issue in his objections to the PSR or during his sentencing hearing, review is for plain error. *See United States v. Scrivner*, 114 F.3d 964, 966 (9th Cir. 1997) (applying plain error where defendants did not object to the PSR or during their sentencing hearing.).

**[14]** Before a sentence may be enhanced under 21 U.S.C. § 841(b) for a prior drug conviction, the government must file an information in compliance with 21 U.S.C. § 851(a).[9] "The statute merely ensures proper notice so a defendant is able to challenge the information . . . ." *United States v. Severino*, 316 F.3d 939, 943 (9th Cir. 2003) (en banc) (citation and internal quotation marks omitted). The statute's purpose of providing notice is satisfied "[i]f the defendant, reading the information in context, will have no trouble understanding which prior conviction the prosecutor means to identify . . . ." *Id.* at 943-44.

**[15]** The government filed the required information in this case, identifying the 1997 felony drug conviction used to enhance Baranda's sentence. Baranda obviously had no trouble recognizing the conviction because it was the only one alleged, and he challenged it on the basis that his plea colloquy was constitutionally deficient. Therefore, he "could not have been confused about the prior conviction[,]" and section 851(a) was satisfied. *Id.* at 944.

Baranda also raises a constitutional challenge to 21 U.S.C. § 851(e) under the equal protection and due process clauses of the Fifth Amendment. However, we have previously considered and rejected this very argument. *See United States v. Davis*, 36 F.3d 1424, 1438-39 (9th Cir. 1994) (rejecting the claim that section 851(e) violates due process or equal protection.).

---

[9]Section 851(a) provides, in relevant part:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon . . . .

21 U.S.C. § 851(a).

Finally, Baranda maintains that imposition of the twenty-year mandatory minimum sentence violates the Eighth Amendment because such a sentence would not reflect an individualized assessment of his culpability. "We review de novo the constitutionality of a sentence." *United States v. Barajas-Avalos*, 377 F.3d 1040, 1060 (9th Cir. 2004) (citation omitted).

**[16]** "[F]ederal courts should be reluctant to review legislatively mandated terms of imprisonment because the fixing of prison terms for specific crimes is properly within the province of legislatures, not courts." *Id.* (citations, alteration, and internal quotation marks omitted). For this reason, "[m]andatory minimum sentencing schemes have been consistently upheld against constitutional challenge," *United States v. Wilkins*, 911 F.2d 337, 339 (9th Cir. 1990) (citing cases), and "outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Barajas-Avalos*, 377 F.3d at 1060 (citation and alteration omitted).

**[17]** In this case, the imposition of the twenty-year mandatory minimum sentence would not be cruel and unusual for a defendant who, like Baranda, has been convicted of a serious drug crime and has a prior felony drug conviction. *See id.* at 1060-61 (upholding a 360-month sentence for a defendant convicted of attempting to manufacture and manufacturing methamphetamine and who had only a prior misdemeanor conviction).

**[18]** We conclude that the district court erred in allowing Baranda to collaterally attack his prior conviction, and we therefore vacate his sentence and remand to the district court for re-sentencing consistent with this opinion.

## III
## *CONCLUSION*

The district court correctly denied Labrada and Duarte's motion to suppress because both defendants knowingly and

intelligently waived their *Miranda* rights and the waivers were voluntary. There was sufficient evidence for a rational jury to find, beyond a reasonable doubt, that Labrada intended to distribute fifty grams or more of meth. Labrada did not receive ineffective assistance of counsel, as the court accepted and considered counsel's oral objections. Because of the district court's clear indication that it felt constrained by the Guidelines, and because the district court impermissibly permitted Baranda to collaterally attack his 1997 conviction, we vacate the sentences imposed so that the defendants can be re-sentenced under the now-advisory Guidelines.

**CONVICTIONS AFFIRMED**; **SENTENCES VACATED** and **REMANDED** for re-sentencing.