PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

       *Plaintiff-Appellee,*

v.

SCOTT WILLIAM THOMPSON,

       *Defendant-Appellant.*

No. 07-5028

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Jerome B. Friedman, District Judge.
(4:06-cr-00031-JBF)

Argued: December 5, 2008

Decided: February 9, 2009

Before NIEMEYER, SHEDD, and DUNCAN,
Circuit Judges.

Affirmed by published opinion. Judge Shedd wrote the opinion, in which Judge Niemeyer and Judge Duncan joined.

## COUNSEL

**ARGUED:** Frances H. Pratt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Eric Matthew Hurt, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee. **ON**

**BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, Arenda L. Wright Allen, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, Richard D. Cooke, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

---

## OPINION

SHEDD, Circuit Judge:

Scott William Thompson appeals the district court's imposition of a mandatory life sentence pursuant to the federal "three strikes" law. *See* 18 U.S.C. § 3559(c). For the reasons that follow, we affirm.

### I.

Thompson pled guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a) for the February 3, 2006, robbery of a Wachovia branch in Williamsburg, Virginia.[1] The "three strikes" law requires the district court to impose a mandatory life sentence upon the conviction of a "serious violent felony" if the defendant has either two prior convictions for serious violent felonies or at least one conviction for a serious violent felony and at least one conviction for a serious drug offense. *See* § 3559(c)(1). The statute defines "serious violent felony" to include robbery. *See* § 3559(c)(2)(F)(i).

Although Thompson pled guilty to a serious violent felony — bank robbery — he argues that the statute's so-called

---

[1]Thompson was also charged with one count of bank robbery involving a robbery of the Suntrust Bank in Williamsburg, Virginia. The government dismissed this count.

safety valve[2] applies to his robbery and, therefore, he should not have received a mandatory life sentence.[3] The statute's safety valve provides that a robbery shall not qualify as a serious violent felony "if the defendant establishes by clear and convincing evidence" that (so far as is relevant to this case) the defendant did not threaten the use of a firearm or other dangerous weapon. *See* § 3559(c)(3)(A).

Thompson concedes that he has two qualifying convictions for previous serious violent felonies (*i.e.*, two strikes), but he argues that his latest conviction should not be considered a strike because he met his burden under the statute. He also argues that § 3559(c) violates his constitutional rights because the sentence was based on judicial fact-finding that increased the applicable statutory maximum from twenty years to life imprisonment. We reject both of these contentions.

---

[2]Other circuits have referred to this safety valve as an affirmative defense. *See United States v. Brown*, 276 F.3d 930, 933 (7th Cir. 2002). We believe it is more appropriate to refer to this provision as a safety valve. Affirmative defenses operate to excuse criminal liability. *See Smart v. Leeke*, 873 F.2d 1558,1575 n. 22 (4th Cir. 1989) (holding "an affirmative defense does not negate an element of a crime; . . . it . . . excuses punishment for a crime the elements of which have been established and admitted") (internal citations and quotations omitted). Safety valves, on the other hand, operate in the context of sentencing after criminal liability has already been established. At least two other circuits have referred to this provision as a safety valve. *See United States v. Contreras*, 536 F.3d 1167, 1173 (10th Cir. 2008) (holding "[t]he statutory scheme also provides a *safety valve*, whereby a defendant can demonstrate that a prior conviction should not count as a serious violent felony because of mitigating factors") (emphasis added); *United States v. Snype*, 441 F.3d 119, 144 (2nd Cir. 2006) (noting that § 3559(c)(3) "serves, in effect, as a *safety valve*") (emphasis added).

[3]Had Thompson not qualified for a mandatory life sentence under the "three strikes" law, he would have faced a maximum sentence of twenty years. *See* 18 U.S.C. § 2113(a).

## II.

At the outset, we address Thompson's argument that his conviction should not qualify as a strike. Whether an offense is a strike under the "three strikes" law is an issue to be decided by the court during sentencing. *See United States v. Hopkins*, 310 F.3d 145, 154 (4th Cir. 2002). If, in the course of making this determination, the district court makes findings of fact, we defer to its factual findings and will not set them aside unless they are clearly erroneous. *See Evergreen Intern., S.A. v. Norfolk Dredging Co.*, 531 F.3d 302, 308 (4th Cir. 2008). Moreover, when a district court's factual finding "is based upon assessments of witness credibility, such finding 'is deserving of the highest degree of appellate deference.'" *Id.* (quoting *United States Fire Ins. Co. v. Allied Towing Corp.*, 966 F.2d 820, 824 (4th Cir. 1992)).

Thompson argues that the district court erred in finding that he did not meet his burden under the statute. To meet his burden, Thompson was required to show with clear and convincing evidence that he did not threaten to use a firearm during the relevant robbery.[4] Whether Thompson threatened to use a firearm is undoubtedly a factual determination. To assist in this determination, the district court held an evidentiary hearing during which five witnesses testified.[5]

The government presented two witnesses who testified that Thompson threatened to use a firearm during the Wachovia robbery. Sibit Stewart, a Wachovia employee, was in the break room of the Wachovia branch when the robbery

---

[4]There is no evidence that Thompson actually used a firearm during the relevant robbery.

[5]The parties were willing to resolve this issue based on witness affidavits. The district court, however, wanted to hear from the witnesses before making the determination. The district court continued Thompson's sentencing on two occasions in order for the parties to present witnesses on the issue now before us.

occurred. Stewart heard Thompson yelling that he would shoot people. She testified:

> I looked at the monitors and I could see a male with a beard and a hat and a long overcoat. At the same time I could hear him. There wasn't sound coming from the monitors because it didn't have speakers, but I could hear him through, I guess, the hallway screaming, 'Teller manager. Teller manager. This is no joke. No dye packs. Don't take any money from the top drawer, take it from the bottom drawer. I'll f[***]ing kill you. I'll f[***]ing shoot you.'

J.A. 150. Stewart admitted that she never actually saw a firearm, but she did hear Thompson threaten to use a firearm more than once. Stewart noted these threats in a written statement provided to the police immediately following the robbery. The district court found Stewart credible because she was not in the firing line and, therefore, she likely had the clearest perception of those present.

Carmen Blackwell, a Wachovia employee, testified that she was in a glass-encased office approximately 15 to 20 feet from the teller line when Thompson entered the bank. She testified that Thompson acted violently and erratically and demanded to see the head teller. She observed that Thompson kept one hand in his pocket as if he had a gun and when the head teller identified herself, Thompson said, "I'm not f[***]ing with you. You b[****]es give me your money right now or I'll blow your f[***]ing heads off." J.A. 158. Blackwell testified that as Thompson paced back and forth, he continued his threats:

> At that point he went to take his hand out of his pocket, like he was going to pan, and I could not tell if it was a gun in his hand or his hands, but he was holding it like a gun, and started screaming, 'Everyone, get the f**k down. I'll blow your f***ing heads

off,' and he just kept screaming that over and over.
At that point I hid under my desk because I was ter-
rified he was going to start shooting people.

J.A. 158-59. Blackwell's written statement to police immedi-
ately following the robbery did not describe these threats. In
recognizing this omission, the district court stated that she
was "obviously extremely shaken," as evidenced by the fact
that she hardly recognized her own handwriting. J.A. 179.

Thompson presented three witnesses. Richard Wilson, a
Wachovia customer at the time of the robbery, testified that
while he did not hear any threats, he did fear for his life. Wil-
son testified that he began to worry that he was not going to
make it out of the bank alive. He also testified that it was his
son's birthday that day, and he did not know if he would ever
see his son again. Wilson admitted he might not have heard
the threats because his thoughts were concentrated on whether
he was going to make it out of the bank. The district court
noted that Wilson was not sure he heard everything because
he was afraid.

Gloria Horton, a bank customer, testified that she did not
hear any threats. She stated that she was closely situated to
Thompson and that he ordered her to get down on the floor.
As she was trying to get down, her leg slipped, and she
tripped Thompson. Thompson reacted by calling her a
"b[**]ch." Horton testified that she never feared for her life
and that she heard everything Thompson said during the rob-
bery. The district court questioned the credibility of this testi-
mony because the other witnesses who testified were scared
during the robbery. The court concluded that it was not credi-
ble that Horton was not scared at all.

Detective Edward Schneider testified as to his investigation
of the robbery. He interviewed the witnesses and took their
statements. He stated that immediately after the robbery, only
Stewart had given a written statement that Thompson had

threatened to use a firearm. However, Schneider admitted on cross examination that others had verbally told him that Thompson made these threats. The district court discounted Schneider's testimony about whether there were threats of the use of a firearm because "he wasn't there, obviously." J.A. 177.

The district court found that Thompson had not met his burden of showing with clear and convincing evidence that he did not threaten to use a firearm. In announcing its decision, the court reiterated the importance of hearing live witness testimony when making credibility determinations. We note that the district court's finding is consistent with Thompson's own stipulated fact that "[t]he defendant also demanded that the bank employees not put bait money or dye packs into the money bags '*or else.*' The employees took this as a threat and were fearful for their safety and lives." J.A. 16 (emphasis added). After reviewing the record and in light of Thompson's burden, we conclude that the district court did not commit clear error in making this factual determination.

III.

Thompson next argues that the mandatory life sentence he received is unconstitutional. Because he did not raise this issue below, we review his claim for plain error. *See United States v. Olano*, 507 U.S. 725 (1993). To establish plain error, Thompson must show that an error occurred, that the error was plain, and that the error affected his substantial rights. *Id.* at 732-34. Even if Thompson makes this three-part showing, correction of the error remains within our discretion, which we should not exercise "unless the error 'seriously affect[s] the fairness, integrity or public reputation of [the] judicial proceedings.'" *Id.* at 732 (internal citations omitted).

Thompson argues that the district court's factual finding under the "three strikes" law violates the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*,

the Supreme Court held that other than the fact of a prior con-
viction, any fact that increases a defendant's sentence beyond
the prescribed statutory maximum must be found by a jury
and proved beyond a reasonable doubt. *Id.* at 490.

Thompson contends that the finding that he did not meet
his burden increased his sentence beyond the otherwise appli-
cable statutory maximum.[6] This is incorrect. There was no
fact-finding that increased Thompson's sentence. Rather,
there was only fact-finding to determine whether to *reduce*
Thompson's sentence. The safety valve in § 3559(c) was
intended to ensure that truly non-violent offenses do not qual-
ify as serious violent felonies. *Brown*, 276 F.3d at 933. The
Supreme Court has held that a "three strikes" law is constitu-
tional without a safety valve. *See Ewing v. California*, 538
U.S. 11 (2003) (holding California's "three strikes" law con-
stitutional). Further, Thompson concedes that § 3559(c) is
constitutional without a safety valve. Therefore, the fact that
Congress chose to include this safety valve to benefit a certain
class of defendants whose offense is truly non-violent does
not then make the statute unconstitutional.

In *Brown*, the Seventh Circuit held that "*Apprendi* leaves
undisturbed the principle that while the prosecution must
indeed prove all the elements of the offense charged beyond
a reasonable doubt, the legislation creating the offense can
place the burden of proving [the safety valve] on the defen-
dant." *Brown*, 276 F.3d at 932 (citations omitted). It further
stated: "[t]he federal 'three strikes' law does not alter the
existing statutory definition of bank robbery. It just allows the
defendant to show that the particular robbery he committed
was not very violent." *Id.* at 933. We agree.

---

[6]One way to characterize Thompson's argument is that he wants the
applicable statutory maximum to be changed from mandatory life impris-
onment to 20 years. Here, we characterize it as a request for a reduced sen-
tence — that is, Thompson wanted the district court to reduce his sentence
from the mandatory life sentence to a maximum sentence of twenty years
by arguing he qualified for the safety valve.

Because we have never examined the safety valve in the "three strikes" law under this challenge, it is helpful to examine the analogous safety valve in the United States Sentencing Guidelines promulgated pursuant to 18 U.S.C. § 3553(f). *See U.S. Sentencing Guidelines Manual* § 5C1.2 (2008). The sentencing guideline safety valve requires a district court to sentence a defendant based on the applicable sentencing guidelines without regard to any statutory minimum when the defendant meets the five statutory criteria. *Id.* The defendant bears the burden to prove he has met the criteria for eligibility under the § 5C1.2 safety valve. *Id.*; *see also United States v. Wilson*, 114 F.3d 429, 432 (4th Cir. 1997) (holding "[t]he defendant bears the burden of proving the existence of the five prerequisites set forth in § 5C1.2") (internal citations omitted). Further, the district court must make certain factual findings to determine whether a defendant has met the criteria under § 5C1.2. For example, under § 5C1.2, a defendant must show, *inter alia*, that he did not use violence or credible threats of violence or possess a firearm. *See* § 5C1.2(a)(2). This factual determination is made during sentencing without the aid of a jury. Thus, § 5C1.2's safety valve operates identically to the safety valve in the "three strikes" law.

Under similar challenges as Thompson now makes, other circuits have held that factual determinations made under § 5C1.2's safety valve do not offend *Apprendi*. *See, e.g.*, *U.S. v. Poyato*, 454 F.3d 1295, 1299 (11th Cir. 2006) (holding "there is no requirement in [§ 5C1.2], or otherwise in the law, that the jury make findings . . . with regard to the five prerequisites for application of the safety valve"); *U.S. v. Holguin*, 436 F.3d 111, 117 (2nd Cir. 2006) (holding the district court's application of § 5C1.2's safety valve did not violate *Apprendi*); *United States v. Labrada-Bustamante*, 428 F.3d 1252, 1263 (9th Cir. 2005) (holding that a district court denying defendant application of the safety valve in § 5C1.2 after making certain factual findings that disqualified defendant for the safety valve does not violate the rule announced in *Apprendi*).

In *Holguin*, the Second Circuit found that judicial fact-finding to determine whether the safety valve in § 5C1.2 applied "does not permit a higher maximum sentence to be imposed; the only effect of the judicial fact-finding is either to *reduce* a defendant's sentencing range or to leave the sentencing range alone, not to *increase* it." *Holguin*, 436 F.3d at 117 (emphasis in original). The Second Circuit stated further that the defendant "turns [§ 5C1.2] on its head by converting the eligibility criteria for a sentence *reduction* into elements of the offense which *increase* his maximum sentence." *Id.* (emphasis in original). The Second Circuit's reasoning is directly applicable to the safety valve at issue here.[7]

Prior to pleading guilty, Thompson had proper notice that the government was seeking a mandatory life sentence based on the current offense and his criminal history. The government sought this mandatory life sentence based on the fact that bank robbery qualifies as a strike. Thus, Thompson pled guilty to the crime that subjected him to the mandatory life sentence. This plea satisfies any *Apprendi* concern. In short, the district court did not commit plain error because Thompson's sentence was not increased based on judicial fact-finding in violation of *Apprendi*.

IV.

Based on the foregoing, we affirm the judgment of the district court.

*AFFIRMED*

---

[7]Thompson's view that the safety valve is a matter to be proved at trial would potentially prejudice defendants in their right not to present a defense. For example, a defendant charged with bank robbery could be forced to present evidence in his defense in order to meet his burden under the safety valve, rather than simply allowing the jury to determine his case on the government's evidence.